OPINION OF THE COURT
Smith, J.
The issue presented on this appeal is whether a declaratory judgment action was properly dismissed on the ground that plaintiff failed to exhaust administrative remedies. We conclude that the dismissal was improper because, in this case, the pursuit of administrative remedies would have been futile. Accordingly, we modify the order of the Appellate Division and remit this declaratory judgment action to the trial court for a determination on the merits of plaintiffs complaint.
Between August and November 1992, plaintiff submitted petitions to the Department of Environmental Conservation (DEC) pursuant to DEC’s Beneficial Use Determination (BUD) program. The petitions sought permission to use waste materials as substitutes for raw materials in plaintiff’s cement manufacturing processes. Upon the fulfillment of certain conditions, the BUD program permits the storage and use of solid waste materials, without a solid waste management facility permit, if those waste materials are incorporated into a marketable product, i.e., "beneficially used” (see, 6 NYCRR 360-1.15, formerly 6 NYCRR 360-1.2). Otherwise, the management, disposal and storage of nonhazardous solid waste may be handled only by solid waste management facilities. These facilities are subject to extensive regulation (see, 6 NYCRR part 360).
In March and July of 1993, plaintiff sent two demand letters to DEC stating that six of its pending BUD petitions would be deemed approved pursuant to the Uniform Procedures Act (UPA) unless DEC issued determinations on the petitions within five working days. The UPA provides specific time frames in which the DEC must notify permit applicants that *139 their applications are incomplete, hold hearings (where required), and issue decisions on applications (see, ECL 70-0109). "Permit” is defined by statute as "any permit, certificate, license or other form of department approval” (ECL 70-0105 [4]). The NYCRR applies UPA time frames to permit applications relating to the collection, treatment and disposal of refuse and other solid waste (see, ECL 70-0107, 70-0109).
DEC responded to plaintiffs demand letters by stating, in letters dated March 29, 1993 and July 15, 1993, that the UPA does not apply to BUD petitions. DEC’s replies declared:
"A determination of beneficial use, as provided for in 6 NYCRR Part 360-1.2 (a) (5) [recodified and amended as 6 NYCRR 360-1.15], is a decision regarding the Department’s jurisdiction to regulate an activity as a solid waste management facility. A request for a beneficial use determination is not an application for a permit. Such a request is not subject to the timeframes [sic] or any other provision of the Uniform Procedures Act. Consequently, your request for a decision under 6 NYCRR Part 621.9 (b) is not appropriate in this instance.”
Both DEC responses were signed by DEC’s Chief Permit Administrator.
After receiving DEC’s reply letters, plaintiff commenced this declaratory judgment action in Supreme Court seeking a declaration that UPA time frames apply to BUD petitions, and deeming eight of plaintiff’s petitions approved. Plaintiff then moved for summary judgment. DEC cross-moved to convert the action into a CPLR article 78 proceeding and to dismiss. DEC argued that its determination, that UPA time frames do not apply to BUD petitions, was rational. Alternatively, DEC sought a declaration that the UPA does not apply to the BUD program. In support of its cross motion, DEC submitted an affidavit from its Chief Permit Administrator stating:
"The Department has, since the promulgation of Part 360 on December 31, 1988, taken the position that the type of decisions which plaintiff sought was a determination in the first instance or a confirmation that the proposed uses of certain 'solid waste’ materials in a beneficial manner were exempt from the definition of 'solid waste’ and, therefore, exempt from the Department’s extensive Part 360 regulations. Therefore, it is our view that *140 petitions for beneficial use determinations are similar to petitions for declaratory rulings. * * * In reviewing plaintiff’s letter demands, my staff consulted its counterpart staff in the Department’s Region 4 office and also the Department’s Division of Legal Affairs. As a result of these consultations, I affirmed the Department’s longstanding position that petitions for beneficial use determinations are not subject to the requirements of the UPA.”
While the declaratory judgment action was pending, the DEC completed processing, and issued decisions on, the eight BUD petitions specified in plaintiff’s complaint. The DEC granted one petition, requested additional information on another, and denied six petitions. Plaintiff commenced a separate article 78 proceeding seeking annulment of the six denials.
While the article 78 proceeding was pending, the Supreme Court in the declaratory judgment action, sua sponte, dismissed plaintiff’s complaint on the ground that plaintiff failed to exhaust administrative remedies. The Supreme Court held that plaintiff should have sought a declaratory ruling from the DEC on whether the UPA applied to BUD petitions before commencing this present action (see, State Administrative Procedure Act § 204; 6 NYCRR part 619). Plaintiff appealed the dismissal of its action to the Appellate Division. During the appeal, the article 78 proceeding was dismissed on the ground that DEC had not acted arbitrarily, capriciously or irrationally in denying the six BUD petitions (see, Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 161 Misc 2d 652). Plaintiff did not appeal the dismissal of its article 78 petition. Subsequently, the Appellate Division affirmed Supreme Court’s dismissal of the declaratory judgment action.
Plaintiff argues that the State Administrative Procedure Act does not require the pursuit of administrative remedies before relief may be sought in Supreme Court, and that in this case, pursuing a declaratory ruling from the DEC would have been futile. Generally, "one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law” (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57). However, exhaustion of administrative remedies is not required where an agency’s action is challenged as beyond its grant of power or when resort to an administrative remedy would be futile (Watergate, supra, at 57). Although a court may dismiss a declaratory judgment action in a proper exercise of discretion, *141 the mere existence of other adequate remedies does not mandate dismissal (CPLR 3001; Matter of Morgenthau v Erlbaum, 59 NY2d 143, 148).
Here, the DEC clearly and unequivocally stated its long-established position that UPA time frames do not apply to BUD petitions, both in correspondence with plaintiff and through the affidavit of the Chief Permit Administrator. The Chief Permit Administrator, who consulted with counterparts in DEC’s Region 4 office and with DEC’s Division of Legal Affairs, "affirmed” DEC’s "longstanding position” that the UPA does not apply to BUD petitions. DEC has taken this position since the promulgation of part 360 of the NYCRR, which became effective as of December 31, 1988.[1] Consequently, ever since the inception of the BUD program, the DEC, as a matter of policy on at least a regional basis,[2] has processed BUD petitions in accordance with the view that compliance with UPA time frames was not necessary.
DEC arrived at a definitive position which concretely affected the status of plaintiff’s BUD petitions and then communicated this position to plaintiff. As a result of DEC’s actions, plaintiff continued to remain in the dark as to when it could expect DEC to finish processing its BUD petitions. However, plaintiff received notification that no matter how long the processing took, the BUD petitions could not be deemed approved because, according to the DEC, the UPA time frames did not apply. Under the particular circumstances of this case, any resort by plaintiff to administrative remedies would have been futile.
The evidence before the Supreme Court indicated that the Chief Permit Administrator’s letter accurately stated longstanding agency policy. The Supreme Court erred because it required plaintiff to pursue administrative remedies when the evidence demonstrated that resort to administrative remedies would have been futile.
Supreme Court’s reliance on New York Inst. for Educ. of Blind v United Fedn. of Teachers’ Comm. (83 AD2d 390, affd 57 NY2d 982) was misguided as that case differed markedly from the circumstances here. In New York Inst., we affirmed *142 the dismissal of plaintiff's declaratory judgment complaint for failure to exhaust administrative remedies because the New York State Labor Relations Board had not passed on the issue of whether plaintiff, a State-supported private school, was a public employer under article 14 of the Civil Service Law. Resort to administrative remedies there would not have been futile because the administrative agency did not issue any sort of determination or statement of policy on the issue in dispute.
The dissent also relies on inapposite authority. In Matter of Kirk v Bahou (73 AD2d 770, affd 51 NY2d 867) petitioners sought the annulment of civil service examination results and an injunction preventing the Civil Service Commission from certifying or appointing anyone from an eligible list drawn from the civil service examination, even though the Commission had not determined whether it would uphold the results of the examination in dispute. Petitioners did not present any evidence that the Commission had decided to certify a list based on the examination results, offering instead, a statement by one petitioner that "I believe” the Commission has already decided this matter. Under these circumstances, resort to administrative remedies would not have been futile, and the petition was dismissed for failure to exhaust administrative remedies.
Matter of Grattan v Department of Social Servs. (131 AD2d 191, lv denied 70 NY2d 616) involved an attempt by the State Department of Health to recover Medicaid overpayments to the Albany County Health Department. The Albany County Health Department sought an injunction against the recoupment on the ground that too much time had elapsed between the alleged overpayments and the decision to recoup. Finding no evidence in the record which clearly indicated that the State Department of Health had predetermined the issue of timeliness, or construed the relevant regulation in a manner which would require an adverse result against the Albany County Health Department in an administrative hearing, the Appellate Division held that futility of pursuing administrative remedies had not been demonstrated.
Unlike New York Inst., Bahou or Grattan the administrative agency here clearly and unequivocally stated its long-standing position, in effect since the inception of the BUD program, that the UPA does not apply to BUD petitions. Moreover, DEC implemented this policy on at least a regional basis. Nothing in the record supports the dissent’s characterization of the Chief Permit Administrator as an "administrative function *143 arv.” Indeed, the NYCRR suggests that the Chief Permit Administrator is a policy-making employee empowered to act on behalf of the DEC Commissioner on issues relating to permit application processing. The NYCRR provides that:
"Chief permit administrator means an employee of the department located in the main office of the department and designated to act on the commissioner’s behalf in carrying out [part 621]”[3] (6 NYCRR 621.1 [b]).
Even if we assume that the Chief Permit Administrator could not set agency policy, nothing indicates that the letters sent to plaintiff did not accurately reflect agency policy (see, Compass Adjusters & Investigators v Commissioner of Taxation & Fin., 197 AD2d 38).
This case does not involve a new, unarticulated or unsettled policy issue within the administrative agency, a vague or unclear articulation of agency policy, a case-specific determination on unique facts, decisions issued by low-level agency employees, or any other circumstance which calls for a hearing so that a clearer formulation of and the rationales for agency policy may be fully aired. The plaintiff here could not hope to obtain a clearer definition or resolution of issues than already provided by the DEC.
Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the complaint and, as so modified, affirmed.

. 6 NYCRR part 360 regulates all solid waste management facilities, except for hazardous waste management facilities (see, 6 NYCRR 360-1.1).

. The Chief Permit Administrator’s affidavit stated that "regional staff’ and "staff in the Department’s Region 4 office” were consulted before the Department’s long-standing position was affirmed.

. Part 621 governs the procedures used in processing permit applications as required by certain sections of the ECL (see, 6 NYCRR part 621-Introduction).