[656 NYS2d 777]

In the Matter of COMMUNITY HOUSING IMPROVEMENT PROGRAM, INC., et al., Appellants, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent.

Third Department, May 1, 1997

**APPEARANCES OF COUNSEL**

*Borah, Goldstein, Altschuler & Schwartz, P. C.*, New York City (*Jeffrey R. Metz* of counsel), for appellants.

*Martin B. Schneider*, New York City, and *Marcia P. Hirsch*, Bronx, for respondent.

**OPINION OF THE COURT**

CARPINELLO, J.

In 1970, the City of New York enacted Local Law No. 30 substantially revising New York City rent control laws. "Its aim was to allow for gradual decontrol of rents in a manner that would take into consideration the landlords' interests in making their enterprises profitable and the tenants' interests in continued upkeep of their buildings without precipitous rent rises" (*Matter of 89 Christopher v Joy*, 35 NY2d 213, 217). Pursuant to these revisions, a maximum base rent system· was established for each rent-controlled apartment. By virtue of the Omnibus Housing Act of 1983 (L 1983, ch 403), all functions and responsibilities of administering the rent control program were transferred to respondent.

Under the statutory scheme of rent control, the maximum base rent that a landlord may collect from a rent-controlled tenant is calculated by using a statutorily defined mathemati-

cal formula which includes, as one of many factors, the capital value of the property. "The maximum base rents were designed to allow the landlords an $8^1/2\%$ return on capital investment, based on the assessed value of the buildings for real estate tax purposes, after equalization" (*Matter of 89 Christopher v Joy, supra,* at 219 [citation omitted]). Regardless of the maximum base rent calculation, there is an annual cap on rent increases of 7.5% (*see,* Administrative Code of City of NY § 26-405 [a] [5]). Every two years, the maximum base rents are recalculated by respondent to keep abreast of economic changes (*see,* Administrative Code § 26-405 [a] [4]; *see also, Mayer v City Rent Agency,* 46 NY2d 139, 145).

At issue in this proceeding is the method employed by respondent in calculating its most recent biennial maximum base rent for rent-controlled apartments in New York City. Petitioners, owners of rent-controlled units in New York City and industry trade organizations representing property owners throughout New York City, claim that respondent has acted ultra vires and arbitrarily by computing the capital value component of the maximum base rent in disregard of the mandates of Administrative Code § 26-405 (a) (3). This provision provides that "[c]apital value *shall* be equalized assessed valuation as established pursuant to [RPTL article 12-A]" (emphasis supplied).

It is undisputed that, as of 1986, respondent has been calculating the maximum base rent by utilizing RPTL article 12, not RPTL article 12-A, to compute capital value. Specifically, respondent utilizes the "class two ratio" pursuant to RPTL 1802 as directed under RPTL article 12 and in so doing has narrowed the field of appraised property to multiunit residential properties which account for over 90% of all rent-controlled property. According to respondent, the class two equalization ratio of RPTL article 12 is a more accurate measure of the value of apartment buildings than the ratio outlined in RPTL article 12-A because the class two ratio measures the value of apartment buildings specifically, while the RPTL article 12-A ratio measures the value of all real property within New York City for the singular purpose of establishing the constitutional debt limit.

Petitioners commenced this proceeding to annul the determination and to direct respondent to calculate the maximum base rent by computing the capital value component pursuant to RPTL article 12-A as mandated by the Administrative Code. Supreme Court agreed with the logic of respondent's position

and dismissed the petition, prompting this appeal. Specifically, Supreme Court held: "While the statute specifies the use of article 12-A equalization rates in calculating the amount of such investment, it appears that at the time the statute was enacted, article 12 and article 12-A equalization rates were substantially identical. Since that time, it appears that the City of New York has assessed residential rental properties at a substantially higher percentage of their fair market value than other classes of property within the city. The Legislature could hardly have foreseen this divergence in equalization rates * * * and given the substantial equivalence of article-12 and article 12-A equalization rates at the time the statute was enacted, it is extremely unlikely that the Legislature intended to utilize article 12-A equalization rates if such rates provided a rate of return in excess of $8^{1}/_{2}\%$ of the actual value of the rental properties" (citation omitted).

Petitioners argue that respondent's refusal to apply RPTL article 12-A equalization rates is arbitrary and capricious and "is specifically tailored to obtain an artificially low [maximum base rent] factor which, in turn, will ensure that rent controlled tenants—whom [respondent] believes are a special class—will continue to pay artificially low rents". They further claim that respondent's ultra vires formula leads to an anachronistic result; to wit, "continued artificially low rents which foster disinvestment and abandonment of buildings".

Initially, we note that respondent's policy of utilizing RPTL article 12 and not RPTL article 12-A in computing the capital value is well established. Accordingly, we reject its claim that the proceeding should be dismissed for failure to exhaust administrative remedies (*see, e.g., Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation*, 87 NY2d 136, 141-142). Indeed, this has been the policy of respondent since 1986 (*cf., Matter of Grattan v Department of Social Servs.*, 131 AD2d 191, *lv denied* 70 NY2d 616 [resort to administrative remedies would not have been futile as there was no evidence that agency had predetermined the issue at hand]; *New York Inst. for Educ. of Blind v United Fedn. of Teachers' Comm. for N. Y. Inst. for Educ. of Blind*, 83 AD2d 390, *affd* 57 NY2d 982 [resort to administrative remedies would not have been futile as agency had not passed on issue in dispute]). In light of respondent's clear policy on this issue as expressly stated in numerous explanatory memoranda, the exception to the exhaustion of remedies rule controls—exhaustion of remedies is not required where resort to an administra-

tive remedy would be futile (*see, Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, supra*)—and we decline to dismiss the proceeding on this procedural ground.

■ The provision that maximum base rents are to be calculated using the capital value as set forth in RPTL article 12-A is mandatory (*see*, Administrative Code § 26-405 [a] [3]). Although an administering agency is entitled to considerable deference in its construction and application of enabling legislation (*see, e.g., Matter of Rodriguez v Perales*, 86 NY2d 361, 367; *Matter of Howard v Wyman*, 28 NY2d 434, 438), where "the words of the statute are clear and the question simply involves the proper application of the provision 'there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations' " (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 597, quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459).

Notably, the legislative history of the rent control law speaks in terms of protecting tenants and landlords alike. The intent of the statutory scheme is "to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health" (Administrative Code § 26-401 [a]), while concomitantly permitting landlords to collect sufficient rent "to encourage and promote the improvement and rehabilitation of the housing accommodations subject to control" (Administrative Code § 26-401 [b]; *see, Matter of 89 Christopher v Joy*, 35 NY2d 213, 217, *supra*). In this case, had the Legislature intended to give respondent some discretion in establishing capital value, it could have done so through appropriately worded legislation.

Respondent's disregard for the mandate that RPTL article 12-A equalization rates "shall" be applied is in direct contravention of the plain words of the statute, as well as pertinent administrative regulations (*see*, 9 NYCRR 2201.4 [d]; 2202.8 [a] [4]). "Where the statute is clear and unambiguous on its face the legislation must be interpreted as it exists * * *. Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute" (*Bender v Jamaica Hosp.*, 40 NY2d 560, 561-562 [citations omitted]; *see, Doctors Council v New York City Empls. Retirement Sys.*, 71 NY2d 669, 674; *Patrolmen's Benevolent Assn. v City of New York*, 41 NY2d 205, 208). Rather, the courts "must apply the plain import of the statute" (*Bender v Jamaica Hosp., supra*, at 562).

We recognize that the language of a statute need not always be literally or mechanically applied when, due to significantly changed circumstances, an application of the statute would cause "an anachronistic or absurd result contrary to the contextual purpose of the enactment" (*Doctors Council v New York City Empls. Retirement Sys., supra,* at 675). In this case, respondent claims that if it was to follow the literal meaning of Administrative Code § 26-405 (a) (3) and utilize RPTL article 12-A, the increase in the maximum base rent for the 1996-1997 cycle would be 32.5% (instead of 3%). Respondent further claims that such an "inflated" maximum base rent would force numerous, elderly fixed-income tenants out of their rent-controlled apartments, thereby defeating the purpose of the law.

This argument must fail for two reasons. First, petitioners, as landlords, would still be subject to the 7.5% annual limit on increasing collectible rent (*see,* Administrative Code § 26-405 [a] [5]). If the Legislature intended to also place a limit on the number of consecutive years rent could be increased by 7.5%, it could have provided for such a limitation within the statutory scheme. The absence of any such limitation is not insignificant. Moreover, where rent-controlled tenants are "sixty-two years of age or older and of limited means" (Administrative Code § 26-405 [m]), they are entitled to exemption from all or part of collectible rent increases.

In light of the mandatory language of the statute, we will not "legitimize[ ] by judicial ratification" (*Doctors Council v New York City Empls. Retirement Sys., supra,* at 676) respondent's disregard of the statute. We do not find our decision to be an "absurd result", nor do we find the issue at bar to be the product of "serious [statutory] gaps" (*Matter of 89 Christopher v Joy,* 35 NY2d 213, 220, *supra*) requiring judicial intervention. Notwithstanding the logic of respondent's position, Administrative Code § 26-405 (a) (3) is plain and unqualified and must be enforced in accordance with its terms. Any change in the statute is the province of the Legislature, not the courts.

CARDONA, P. J., CASEY, PETERS and SPAIN, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, determination annulled and petition granted.