OPINION OF THE COURT
Shirley Werner Kornreich, J.
I. Factual and Procedural Background:
A. Facts:
Petitioner, a church and religious school, has brought this CPLR article 78 petition in the nature of mandamus, seeking: (1) to compel the Department of Environmental Protection (DEP) to grant it an exemption from water and sewer charges; (2) to reverse DEP’s assessments, charges and penalties against it; and (3) to abate any tax liens arising from DEP’s assessments, charges and penalties. Respondents cross-move to dismiss the petition, arguing that the petition is not ripe for review and that petitioner failed to exhaust all of its administrative remedies.
Petitioner, a not-for-profit religious institution, has occupied a building located at 36-38 West 123rd Street in Manhattan since 1985. A church and religious school are operated from the building, and the pastor of the church, a teacher for the school and the chief administrator for the church live in three apartments located in the building. Petitioner contends that the church, the school and all three apartments are exempt from water and sewer charges. After initially deciding that none of the apartments were exempt, DEP now has determined that the church, the school and the pastor’s apartment are exempt, but that the two apartments occupied by the teacher and the administrator are not. It is DEP’s position that petitioner is entitled to a partial exemption from water and sewer charges, but it refuses to effect the exemption unless petitioner replaces its water meter with two meters — one for the exempt portion of the building and another for the two apartments. Presently, petitioner *276 owes more than $12,000 in water and sewer charges, a tax lien exists against the property and foreclosure proceedings are under way.
B. Procedural history:
On June 28, 1991, the Assistant Commissioner of the DEP wrote petitioner, acknowledging its application for an exemption from water and sewer charges and informing petitioner that it “may qualify for a partial exemption” for the basement and first floor of the building. He further informed petitioner that a separate meter for the nonexempt portion of the building (the three apartments) would have to be installed and that petitioner must then reapply for its exemption before such an exemption would be granted. A February 11, 1992 letter from petitioner’s pastor was sent in response. He stated that petitioner had made application for an exemption in 1985, but had not received a reply. The pastor explained: “We are a religious organization, providing this community with a vital service. Our only income are gifts that come from the members of this community. We cannot pay these charges, moreover, we are entitled to exemption.” He annexed a copy of the 1985, time-stamped application. The Assistant Commissioner acknowledged this letter on March 12, 1992 and said DEP would make the application for exemption retroactive to 1985, but again emphasized that a separate water meter would have to be installed for the nonexempt portion of the property before an exemption would be granted.
The records of the DEI^ which were attached to respondents’ cross motion, indicate that an exemption was denied in 1991, 1996 and June 30, 1997 due to “3 apts, one for the pastor, another for the caretaker and a third for teacher.” (Feb. 3, 1997, June 30, 1997, Apr. 9, 2001, Aug. 16, 2001 notations.) A March 13, 2003 notation confirms the denials of the exemptions due to the three apartments. Finally, a July 21, 2003 notation records the receipt of another application for exemption and notes, “[T]his property was denied exemption numerous times.” A July 15, 2003 letter from petitioner’s lawyer is also annexed, which letter requests the exemption and includes an application and legal argument based upon cases interpreting property tax exemptions.
In its July 2003 application, petitioner describes itself as a “religious site and non-public school up to grade twelve.” It explains that: daily church services are conducted and 1,700 members attend; weekday classes go on in the building from 7:30 a.m. to 6:00 p.m. providing schooling in secular and religious *277 studies to 65 students and encompassing 180 days of schooling plus summer classes; most students are on scholarship; basic emergency care is provided the students by a registered nurse; and the building contains three dwellings which are occupied by “the pastor and caretaker of the building,” a teacher who teaches full time, year-round, and an individual “who conducts prayer and counselling [sic] from a twenty-four hour hot line connected from the office to her apartment and who works until 9 or 10 at the church every night.” On October 7, 2003, DEP wrote to petitioner acknowledging the July 2003 letter and explaining that taxes are distinguishable from utility charges such as water and sewer and, therefore, are “a contractual obligation and not a tax.” DEI] in the letter, informed petitioner that “[t]he second residence at the BETHELITE Community Church is not a place used exclusively for public worship and is not eligible for exemption for water/sewer charges.”
On March 5, 2004, petitioner’s counsel faxed “an appeal” from the October 7, 2003 decision which had been received by petitioner on November 7, 2003. The written appeal identified the property, and denoted the basis for the appeal, including the reasons petitioner believed the decision incorrect.
The instant article 78 proceeding was brought in March of 2004 as a result of a foreclosure action commenced due to the DEP water and sewer charge liens. The foreclosure action was stayed by Justice Kibbie Payne pending the outcome of this proceeding.
Subsequently, on May 19, 2004, the manager of DEP’s exemptions unit sent a second letter to petitioner’s counsel denoted as a response to the July 2003 letter and application. He made no mention of petitioner’s March 5 appeal letter. Rather, he referred to DEP’s October 2003 letter and stated that that letter had merely addressed the law recited by petitioner, intimating that it was not a decision letter. He then repeated that separate meters were needed for the exempt and nonexempt portions of the building, denied the application for exemption and stated that DEP would entertain an application for exemption once the meters were installed. He also noted that $12,278.20 was owed as of April 29, 2004, that a lien on the property existed, that DEP would move to collect on the lien and that petitioner could contact the collections unit of DEP to work out an arrangement for payment. He did not mention the ongoing foreclosure proceeding by NYCTL-1999-1 Trust, based on the sale of the lien. Finally, the Exemptions Manager explained that *278 petitioner could appeal DEP’s determination through a written request to the Deputy Commissioner, but must do so within 120 days. The address to appeal and the appellate procedure were explained, and petitioner was “advised to pay all past due charges since past due charges and penalties would not abate during the appeals process.” Petitioner informed DEP that it was financially unable to pay the outstanding charges.
On August 3, 2004, petitioner filed a letter of appeal, sending it to the Deputy Commissioner of the DEP and again setting forth the address and block and lot number of the property, as well as the issues and arguments. No decision has been rendered.
II. Discussion:'
1. Article 78:
Petitioner argues that, as a church and school, it is exempt from the payment of water and sewage charges and that the DEP has wrongly determined that the two apartments occupied by the church administrator and by the teacher are not exempt. In addition, it argues that even if the two apartments are not exempt, the remainder of the property is entitled to a proportional partial exemption. (See Matter of St. Luke’s Hosp. v Boyland, 12 NY2d 135, 145 [1962].) It bases its argument on property tax exemption cases which have found that property necessary and fairly coincidental to the operation of a religion or school is exempt from taxation. (See Matter of Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244 [1992].) The court finds petitioner’s position compelling.
The New York City Municipal Water Finance Authority Act is encompassed in Public Authorities Law § 1045-a et seq. Section 1045-g (4) of the Public Authorities Law empowers the Water Board to set fees, rates and charges for water and sewerage, and section 1045-j (5) provides, inter alia, that:
“Tax exempt organizations shall be charged according to the provisions of chapter six hundred ninety-six of the laws of eighteen hundred eighty-seven, as amended by chapters eight hundred ninety-three and eight hundred ninety-four of the laws of nineteen hundred eighty and by provisions which may by law extend the provisions of such chapters from time to time.”
Chapter 893 (§ 1) of the Laws of 1980 provides, inter alia, that:
“[T]he real estate owned by any religious corpora *279 tion located in the city of New York as now constituted, actually dedicated and used by such corporation exclusively as a place of public worship . . . [is] hereby exempted from the payment of any sum of money whatever to said city, for the use of water taken by same from said city.”
Administrative Code of the City of New York § 24-514 (e) exempts from sewer rents or charges “[a]ny real property which is entitled to an exemption from the payment of water rents or charges.”
Here, respondents do not dispute that petitioner, as a religious organization, is exempt from water and sewer charges for the property used for worship, as a school or as the home of its pastor. It refuses, however, to exempt the portion of petitioner’s property which provides housing for petitioner’s administrator and teacher, integral parts of its staff. Respondents support their position by arguing that chapter 893 of the Laws of 1980 must be strictly construed and that exemptions granted for water and sewer charges are to be distinguished from laws exempting religious institutions from property taxes. The court disagrees with this argument.
Although addressed to property tax exemptions, the seminal case of Hapletah v Assessor of Town of Fallsburg (79 NY2d 244 [1992], supra) is instructive here. The plaintiff there, as petitioner here, was a religious institution and school. There, as here, the municipality found a partial tax exemption, refusing to exempt portions of the property used to house staff and arguing that the tax exemption statute only provided for property “used exclusively” for religious purposes and should be given a strict interpretation. The Court of Appeals, however, refused to interpret the exemption so narrowly. Instead, the Court ruled that the test for entitlement to an exemption “is whether the particular use is reasonably incidental] to the [primary or] major purpose of the [facility] whether its primary use is in furtherance of the permitted purposes” (Hapletah v Assessor of Town of Fallsburg at 250 [internal quotation marks deleted], citing St. Luke’s Hosp. v Boyland, 12 NY2d at 143, supra, and Matter of Genesee Hosp. v Wagner, 47 AD2d 37, 44 [4th Dept 1975], affd 39 NY2d 863 [1976]). The Court went on to find that housing provided the staff, who lived on the premises and devoted its time fully to the religious institution, was exempt from the property tax since that housing was clearly incidental to the purpose of the facility.
Hapletah v Assessor of Town of Fallsburg (supra) has been followed consistently by courts determining property tax exemp *280 tion cases (Matter of S.N.H.N.C.Y.I., Inc. v City of Mount Vernon, 5 AD3d 495 [2d Dept 2004]; Matter of Congregation Machne Chaim v Kwak, 3 AD3d 708 [3d Dept 2004]; Matter of Greentree Found. v Assessor of County of Nassau, 302 AD2d 523 [2d Dept 2003]; Matter of Pets Alive v Wanat, 288 AD2d 386 [2d Dept 2001]) and has been interpreted to apply to New York City water charge cases. (Chung Te Buddhist Assn. of N.Y. v Kusterbeck, 2003 NY Slip Op 51432[U] [Sup Ct, NY County 2003, James, J.]; see also Matter of Associated YM-YWHA’S of Greater N.Y. v D’Angelo, 38 Misc 2d 1082, 1082 [Sup Ct, NY County 1963] [statute providing water charge exemption for charitable institution “devoted exclusively” to social settlement work should be liberally construed in keeping with intent of Legislature].) Insofar as the exemption here applies to property used by a religious corporation “exclusively as a place of public worship,” it should be interpreted as applying to all property used in furtherance of the corporation’s purpose. (See Hapletah v Assessor of Town of Fallsburg, supra.) In this case, that would include the housing provided its pastor, teacher and administrator — staff promoting the primary purpose of petitioner’s institution. However, even were this not the case, the partial exemption recognized by respondents should have been granted petitioner, and its water and sewage charges should have been proportionately reduced. (See St. Luke’s Hosp. v Boyland, 12 NY2d at 145, supra.) The DBF’s decision refusing the exemption, therefore, was legally wrong, arbitrary and capricious.
2. Motion to Dismiss:
Respondents, however, argue that the substantive question cannot be addressed and the petition must be dismissed since it not justiciable. Specifically, respondents argue that the decision upon which this petition is based is not ripe for judicial review and that petitioner has failed to exhaust its available administrative remedies. Respondents contend that the October 2003 letter was not a final determination, but merely a response to petitioner’s legal arguments. Respondents further contend that the subsequent May 2004 letter also was not final since DEI] in that letter, provided petitioner with the opportunity to install a second meter and reapply for an exemption or, alternatively, to appeal administratively to the Deputy Commissioner. Respondents argue either of these steps would have ameliorated any “purported injury.”
Respondents set forth the appellate administrative process as delineated in Rules of City of New York Department of Environmental Protection (15 RCNY), Appendix A, part IX, § 1:.
*281 “B. Appeal
“A customer or Authorized Representative may appeal the decision or resolution of a customer complaint rendered at the ‘initial review’ level. An appeal of the charges must be made through a written request to the Deputy Commissioner, BCS, 59-17 Junction Blvd., 13th Floor, Corona, NY 11368-5107. The appeal must include the identification of the property (street address, account number) and charge that the customer is disputing, and a statement of the reason or reasons why the customer believes the charges are incorrect. The Deputy Commissioner will make best efforts to render a written decision as to whether the charges are correct or incorrect, including a statement of the reasons for the decision, within 90 days of receipt of the customer’s appeal. . .
“C. Final Appeal
“If a customer disagrees with the decision rendered by the Deputy Commissioner . . . the customer may appeal the decision by submitting a written request to the Executive Director of the New York City Water Board within 30 days of the date of the denial by the Deputy Commissioner . . . Final Appeals to the Executive Director must establish at least one of the following conditions to be considered: (1) new or additional information is presented; (2) the customer demonstrates that factual information stated in the decision of the Deputy Commissioner is incorrect; (3) the Deputy Commissioner has not correctly interpreted or applied a Water Board rule or rules; (4) the material facts are not as described in the decision . . . Billing decisions will not be reversed unless the customer can demonstrate that an error has been made or presents additional facts relevant to Water Board rules. The Executive Director will make best efforts to render a decision in writing within 60 days of receipt of the final appeal. . . .”
Petitioner has replied to these arguments. It explains:
“The Bethelite Community Church has been located at 36-38 West 123rd Street in Manhattan since 1985. Over the course of the years the church has sheltered the homeless, and operated a school to educate children in a community where the public high school drop out rate is between 50-60%. It has sue *282 cessfully sent many of its students to prestigious high schools such as Cathedral and Rice and then to college. This month four of the students will be Spending time at Oxford University in England.”
Petitioner argues that the apartments are necessary to its work and incidental to its exempt purpose. It reports that tax liens have been “instituted against the church and sold to the NYCTL-99. That group is now seeking to foreclose against the property.” In light of these facts, petitioner argues that exhaustion of remedies is not necessary since: the issue here involves no findings of fact but merely is an issue of law, petitioner faces irreparable harm unless the court intervenes and administrative appeal would prove futile given these facts.
CPLR 7801 (1) specifically provides that an article 78 proceeding may not be brought “to challenge a determination . . . which is not final or can be adequately reviewed by appeal . . . to some other body or officer.” Consequently, an agency determination must be final, and a petitioner must exhaust all administrative remedies prior to seeking article 78 relief. This procedural rule is rooted in the
“salut[a]ry goals of relieving the courts of the burden of deciding questions entrusted to an agency, preventing premature judicial interference with the administrators’ efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its ‘expertise and judgment.’ ” (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978] [citations omitted].)
Administrative rulings are final for article 78 purposes when
“ ‘they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.’ To determine if agency action is final, therefore, consideration must be given to ‘the completeness of the administrative action’ and ‘a pragmatic evaluation [must be made] of whether the “decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.” ’ ” (Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998] [citations omitted]; accord Matter of Demers v New York State Dept. of Envtl. Conservation, 3 AD3d 744, 746 [3d Dept *283 2004] [even when ultimate resolution of matter still pending, determination is final if governmental entity acts beyond statutory authority and causes injury].)
Consequently, if further agency appeal will prevent, ameliorate or render the dispute moot, the administrative decision is not final. (Essex County at 453-454.) On the other hand, if the decision sets forth the definitive agency position and inflicts “an actual, concrete injury,” which no further agency action will alleviate or avoid, the decision is final for article 78 purposes. (Id. at 454; accord Stop-The-Barge v Cahill, 1 NY3d 218 [2003] [final agency action found where Department of Environmental Conservation reached definitive position which resulted in actual concrete injury to petitioners].)
Exceptions to the exhaustion requirement clearly exist. Thus, the rule of finality and exhaustion may be avoided if the administrative remedy available would be futile or if irreparable harm would ensue without judicial intervention. (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7801:7, at 44; see Watergate II Apts. v Buffalo Sewer Auth., supra [exhaustion rule not inflexible and will not be followed when resort to administrative remedy would be futile or would result in irreparable injury]; accord Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 87 NY2d 136, 140 [1995]; Matter of Termini v Hackett, 80 AD2d 730 [4th Dept 1981]; Matter of Caso v New York State Pub. High School Athletic Assn., 78 AD2d 41, 45 [4th Dept 1980].) Similarly, where the only question raised is a question of law, the agency’s expertise is not involved and administrative remedies need not be exhausted. (Matter of Sievers v City of N.Y. Dept. of Bldgs., 146 AD2d 473 [1st Dept 1989].)
Here, the court finds the DEP determination ripe for review. At the time this article 78 proceeding was brought, DEP had repeatedly denied it an exemption and assessed charges in excess of $12,000 against it, liens against petitioner’s property existed and were sold and foreclosure of the building was imminent. Moreover, although an appeal from the October 2003 letter was timely filed, it was ignored, as evidenced by the lack of response and the subsequent May 2004 letter. Given the foreclosure proceeding, it would have been futile and would have resulted in concrete harm for petitioner to delay bringing this proceeding. Indeed, it was pragmatic for petitioner to bring the petition. (Termini v Hackett, supra [petitioner need not exhaust *284 administrative remedies prior to seeking judicial assistance since to do so would have been futile due to time constraints].)
Nor was it necessary for petitioner to exhaust its administrative remedies prior to bringing the instant proceeding. As stated above, it would have been futile and would have caused actual, irreparable injury, viz., the sale of its property, were petitioner to have delayed bringing this proceeding. Once foreclosed, no administrative appeal could ameliorate the harm caused by DEP’s determination. Additionally, no issues of fact remained to be determined, all the evidence and arguments were presented and were a matter of record and DEP’s determination, repeated time and again over a 13-year period, was definitive. All that remained to be decided was a question of law. (Sievers v City of N.Y. Dept. of Bldgs., supra.)
Accordingly it is ordered that respondents’ cross motion to dismiss this proceeding is denied; and it is further ordered and adjudged that the petition is granted as follows:
(1) The determination of the Department of Environmental Protection denying petitioner, Bethelite Community Church, having an address at 36-38 West 123rd Street, New York, New York, an exemption from water and sewer charges from 1985 to present is vacated and petitioner is granted such an exemption;
(2) The assessments, charges and penalties levied by the Department of Environmental Protection against petitioner, Bethelite Community Church, having an address at 36-38 West 123rd Street, New York, New York, are vacated and annulled; and
(3) The tax liens arising from assessments, charges and penalties imposed by the Department of Environmental Protection against petitioner, Bethelite Community Church, having an address at 36-38 West 123rd Street, New York, New York, are vacated and annulled.