[910 NYS2d 841]

In the Matter of SIGNATURE HEALTH CENTER, LLC, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents.

Supreme Court, Nassau County, August 16, 2010

**APPEARANCES OF COUNSEL**

*Andrew Paul Cooper & Associates*, Garden City, for petitioner. *Andrew M. Cuomo, Attorney General*, New York City, for respondents.

**OPINION OF THE COURT**

Edward W. McCarty III, J.

In this CPLR article 78 proceeding petitioner seeks the following relief: (1) an order of mandamus directing the final adjudication of petitioner's "pending" Medicaid claims; (2) the provision of electronic remittance advice as to the processing date, and result of adjudication, for each such claim; (3) the immediate release of all Medicaid payments due petitioner but "withheld" by respondents; (4) interest on all funds wrongfully "withheld" by respondents since the issuance of the Comptroller's final audit report on December 7, 2006; (5) interest on all funds wrongfully "withheld" since the issuance of the notice of

withholding dated August 25, 2009; (6) a hearing on damages related to the arbitrary and capricious "pending" of petitioner's Medicaid claims; and (7) attorneys' fees and expenses pursuant to CPLR 8600 through 8605.

At the outset, petitioner concedes that its request for the immediate release of all of its funds "withheld" by respondents is now premature, due to the new "withhold" placed on those funds, effective June 1, 2010. In addition, petitioner has agreed to discontinue its claims against the New York State Office of the State Comptroller (OSC), in view of CPLR 506 (b) (2), which requires all proceedings against OSC to be venued in Supreme Court, Albany County. Accordingly, all relief against respondent OSC, and the third, fourth, and fifth items of relief sought in petitioner's order to show cause against the remaining respondents, are summarily denied.

## Background

This is an article 78 proceeding by petitioner, a medical service provider, challenging two actions by respondents: (1) the "withholding" of payment of adjudicated Medicaid claims submitted by petitioner; and (2) the "pending" of Medicaid claims submitted by petitioner, without adjudication, for more than four years.

Petitioner was formed in 1999 and operated as a licensed provider in the Medicaid program with diagnostic and treatment centers in the Bronx and Hempstead, and a business office in Hempstead, New York. The New York State Department of Health (DOH) is the state agency that administers the Medicaid program in New York. The New York State Office of the Medicaid Inspector General (OMIG) is an independent entity within the DOH.

In December 2005, DOH commenced an audit of payments received by petitioner for clinic services in 2003/2004. In February 2006, OSC advised petitioner that it also would audit petitioner's records. In connection with these two separate audits, the two challenged actions took place. First, all monies due petitioner on processed claims were "withheld," and second, all as-yet unpaid and unadjudicated claims were "pended."

Petitioner's participation in the Medicaid program was terminated by respondent OMIG, by notice dated June 21, 2006. The reasons given include erroneous billing by petitioner for physicians in excess of 24 hours per day; improper duplicate claims for payment; failure to seek reimbursement first from

third-party payors; improper billing at the higher clinic rate; use of registered physicians assistants not enrolled as providers; false statements on a disclosure of ownership; numerous quality of care deficiencies; and the provision of a multitude of services not shown to be medically necessary.

OMIG referred petitioner to the Medicaid Fraud Control Unit (MFCU) of the Attorney General's Office, and by letter dated August 29, 2006, MFCU accepted the referral. MFCU commenced its own investigation into petitioner's billing practices, and that investigation is ongoing.

OSC issued its final audit report for potential liability dated December 7, 2006, and recommended an audit to assess actual liability. OMIG issued its first draft audit report dated October 5, 2007, and its second draft audit report on March 28, 2008. On June 28, 2009, OMIG issued its final audit report.

Notwithstanding these final reports, OMIG continues to "withhold" payments and "pend" claims on the grounds that "MFCU's investigation of Signature remains open and active" and that "they retain an interest in all Medicaid funds currently held." In addition, the new "withhold" issued by OMIG on May 28, 2010, and implemented by DOH on June 1, 2010, was issued following a request from MFCU to initiate a 100% "withhold."

## The Monies "Withheld"

In connection with its audit, on April 6, 2006, OSC had initiated a payment "withhold" on all payments from Medicaid due to petitioner, and that "withhold" was effected by notice issued to petitioner by OMIG dated April 28, 2006. All monies "withheld" have been deposited into an escrow account. According to petitioner, the amount withheld in the escrow account exceeds approximately $2,431,000. Respondents state that their interests in the "withheld" monies have passed to MFCU. In view of the new "withhold" notice implemented on June 1, 2010 at the request of MFCU, petitioner admits that resolution of the propriety of the "withhold" notices must be denied at this time.

## The Claims "Pended"

The other relief sought by petitioner is the final adjudication of its Medicaid claims that are "pending," that is, unprocessed as well as unpaid, at the time of its termination as a Medicaid provider. According to petitioner, a "pended" claim is "one that

has neither been denied nor accepted by the Medicaid program but, rather, exists [in] a non-adjudicated state in the cyberspace of the Medicaid computer system."

According to respondents, "pended" claims are completely independent of Medicaid "withholds," although respondents point out that should the court direct processing of the "pended" claims, any payments thereunder would be caught by the latest "withhold." Respondents argue that petitioner's claims regarding its "pended" claims have been exaggerated. According to respondents, the number of "pended" claims is 16,932, and the value of these claims is approximately $2,351,891.92.

### Objections in Point of Law

Objections in point of law authorized by CPLR 7804 (f) are "akin to affirmative defenses." (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7804:7, at 674 [2008 ed].)

Respondents' first objection, regarding improper venue, has already been addressed by petitioner's agreement to discontinue all claims against OSC.

Respondents' second objection is petitioner's failure to exhaust administrative remedies. An exception exists to the exhaustion doctrine where an administrative remedy would be futile (*see Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation*, 87 NY2d 136, 140 [1995]; *Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). Here, petitioner's participation in the Medicaid program was terminated, all monies due were "withheld," and all unprocessed claims were "pended." On this record, where the parties vigorously dispute the factual and legal basis for every action taken by each other, the pursuit of any administrative remedies available to petitioner would have been futile. Therefore petitioner's failure to exhaust its remedies does not preclude consideration of the petition.

Respondents' third objection in point of law is failure to state a cause of action. Pursuant to this objection, respondents discuss the regulatory framework that guided their actions, and then they dispute the merits of the petition. However, in considering the objection of failure to state a cause of action in an article 78 proceeding, all of the allegations of the petition must be deemed to be true (*see Matter of Zaidins v Hashmall*, 288 AD2d 316 [2001]; *Matter of De Paoli v Board of Educ., Somers Cent. School Dist.*, 92 AD2d 894 [1983]). Where the allegations of the peti-

tion demonstrate the existence of a bona fide controversy which should be addressed, dismissal for failure to state a cause of action must be denied. Here, the court finds the petition does state a cause of action for relief regarding the "pended" claims.

Respondents' fourth objection is that petitioner is not entitled to a writ of mandamus, because mandamus to compel may be granted only where a petitioner establishes "a clear legal right" to the relief requested (*see Klostermann v Cuomo*, 61 NY2d 525, 539 [1984]). Petitioner argues that the processing of Medicaid claims is a ministerial act that is subject to time constraints (*see Matter of Ostrow v Bane*, 213 AD2d 651 [1995]; *see also Matter of Community Related Servs., Inc. [CRS] v Novello*, 41 AD3d 323 [2007]). As respondents have failed to process petitioner's Medicaid claims for more than four years, petitioner insists that it has "a clear legal right" to such processing. Again, dismissal pursuant to an objection in point of law requires consideration of only the petition, all of the allegations of the petition must be deemed to be true, and all favorable inferences must be drawn in favor of the petitioner (*see Matter of Golden Horizon Terryville Corp. v Prusinowski*, 63 AD3d 930 [2009]). Under these standards, the allegations in the petition state a claim for mandamus relief, directing adjudication of the "pended" claims.

Respondents' fifth objection in point of law is that petitioner's claim for attorneys' fees, pursuant to the Equal Access to Justice Act (EAJA) (found at CPLR article 86), is premature. This court will consider attorneys' fees pursuant to the EAJA after reaching its conclusion on the merits. Consequently, this objection is denied.

### Discussion of "Pended" Claims

Petitioner acknowledges that the authority for "pending" a Medicaid claim is as follows:

> "Where the department's routine utilization review procedures, an analysis of claims, or initial onsite audit findings indicate that a provider has claimed or is claiming for care, services or supplies which may be inconsistent with regulations governing the program or with established standards for quality of care, or which are inappropriate to the client's needs, not medically necessary or in excess of the client's medical needs, *payment of all claims submitted and of all future claims may be delayed or suspended pending completion of an investigation.*"

(18 NYCRR 504.8 [d] [emphasis added].)

While petitioner recognizes this authority for "pending" its unprocessed claims, petitioner argues that a "pended" claim is subject to the procedural and time constraints enunciated in 18 NYCRR part 518 for the "withholding of payments," and 42 CFR 447.45 (d) (4), the federal regulation requiring payment within 12 months of receipt of a claim.

Respondents rely upon 18 NYCRR 518.7 (d) (3), which expressly extends a "withhold" during an investigation. Where initiated by a state agency or law enforcement organization other than DOH (such as MFCU), "the withhold may continue until the agency or prosecuting authority determines that there is insufficient evidence to support an action against the provider or its affiliate, or until the agency or criminal proceedings are completed" (18 NYCRR 518.7 [d] [3]). Respondents argue that as neither event has taken place, the time for adjudication of the "pended" claims has not expired.

Respondents further argue that the federal regulation applies only to "clean claims." "Clean claims" are defined in federal regulations to exclude claims "from a provider who is under investigation for fraud or abuse, or a claim under review for medical necessity" (42 CFR 447.45 [b]). In addition, the federal regulation which petitioner cites, 42 CFR 447.45 (d) (4), expressly excludes from the 12-month time limitation "claims from providers under investigation for fraud or abuse" (42 CFR 447.45 [d] [4] [iii]).

In the final analysis, respondents' explanation for "pending" petitioner's claims for more than four years is the ongoing MFCU investigation. They refer to MFCU as a "fourth state agency," and note that "MFCU is statutorily entitled to seek treble damages on behalf of New York State," the amount of which is still unknown. Consequently, respondents assert that "pending" petitioner's claims is a proper exercise of their authority pursuant to 18 NYCRR 518.7 (d) (3), and apparently the "pending" is necessary in order to offset any damage award which MFCU may ultimately seek.

It is clear that Medicaid payments may be deferred and the public must be assured that Medicaid funds will not be paid to an untrustworthy provider (*see Matter of Siddiqui v New York State Dept. of Social Servs.*, 116 AD2d 909, 911 [1986]). The question that troubles this court is why the MFCU investigation is continuing after more than four years. Without any input from MFCU, this question cannot be answered.

■ Turning to judicial authority, the court first notes that an article 78 proceeding in the nature of mandamus is an appropriate remedy where more than two years have elapsed since services were provided and Medicaid payments for those services have been refused (*see Matter of Bay Ridge Diagnostic & Analytical Lab. v Smith*, 71 AD2d 889 [1979]). Although the Court in *Bay Ridge* was construing regulations governing the Department of Social Services (DSS), rather than the DOH, *Bay Ridge* is instructive because it shows that an agency's failure to pay claims for an extended period is subject to court review in an article 78 proceeding.

*Matter of Ostrow v Bane* (213 AD2d 651 [1995]) expressly deals with claims "pended" pursuant to 18 NYCRR 504.8. In *Ostrow* the Court held that claims "pended" by DSS "may" still be subject to the procedural and time constraints of 18 NYCRR part 518. (*Id.* at 652.) The *Ostrow* Court concluded that the "pending" of the petitioner's claims for more than one year pursuant to 18 NYCRR 504.8 was improper, and upheld the granting of the petition to compel payment of all monies owed.

Here, respondents submit the trial court decision in *Ostrow* (exhibit A to answer), which shows that the regulation relied upon there was 18 NYCRR 518.7 (d) (1), rather than 18 NYCRR 518.7 (d) (3). Respondents further note that the papers in *Ostrow* showed the "utter failure" of the DSS "to comply with its own rules regarding notice and procedure" (exhibit A at 3), while they insist that proper notice and procedure were followed here.

At the very least, *Ostrow* negates respondents' attempt to rely upon a six-year statute of limitations on the audit of pended claims. Generally speaking, the passage of time, standing alone, does not serve as a basis for judicial intervention with peremptory effect into the administrative process (*see Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169 [1985], *cert denied* 476 US 1115 [1986] [administrative delay of approximately three years in adjudicating the final rate of Medicaid reimbursement was found not unreasonable under the State Administrative Procedure Act]). Nevertheless, where as here, a statute or regulation does not provide a time frame for performance, a reasonable period will be implied (*see Spiegelberg v Gomez*, 44 NY2d 920, 921 [1978]; *Matter of Jonathan Neil Corp. v State Liq. Auth.*, 112 AD2d 70 [1985]; *CC&F Buffalo Dev. Co. v Tully*, 103 Misc 2d 1060 [1980]).

Especially here, where the issue is only adjudication of the "pended" claims rather than payment of those claims, the

danger of losing any future award of treble damages to MFCU does not exist. On this record, in the absence of a time frame for completion of an investigation authorized by 18 NYCRR 504.8 (d), the court construes this regulation to provide for such completion within a reasonable time (*see Matter of Kenmar Surgical Aids v New York State Dept. of Health*, 182 Misc 2d 247, 249 [1999]).

While it may be argued that four years is a reasonable time, the court gives respondents the benefit of the doubt, and finds that a reasonable time frame for completion of any investigation shall be within 60 days of receipt of a copy of this determination. Thus, respondents shall have 60 days to encourage MFCU to complete its investigation, and thereafter respondents shall have an additional 60 days to adjudicate to a payment or denial status all of petitioner's "pended" claims. This should not be a difficult task, as respondents admit that the data representing the "pended" claims has already been analyzed for duplicate claims and paid claims.

Respondents allege that the electronic remittance advice sought by petitioner has already been provided, so this relief should be denied as moot. However, since the "pended claims" have not been adjudicated to payment or denial status, the court fails to see how this relief could already have been provided. The petition clearly states that the electronic remittance advice sought is as to the effective processing date for each claim, and the result of such processing. Such electronic remittance advice is directed.

Petitioner has submitted no authority for a hearing on damages related to the "pended" claims (see *Ostrow v Bane* where interest on the "pended" claims was expressly denied), and therefore a hearing is denied.

■ Attorneys' fees pursuant to the EAJA may be awarded only where the petitioner is a "prevailing party" and where the agency's position was not "substantially justified" and no "special circumstances make an award unjust" (*see Matter of Wittlinger v Wing*, 99 NY2d 425, 431 [2003], quoting CPLR 8601 [a]). Of course, agency delays do not automatically give rise to liability for attorneys' fees (*see Matter of Wittlinger* at 432).

The EAJA defines "prevailing party" to mean "a plaintiff or petitioner in the civil action against the state who prevails in whole or in substantial part where such party and the state prevail upon separate issues" (CPLR 8602 [f]). This language

has been construed to mean that a party has "prevailed" if it has succeeded in acquiring a substantial part of the relief sought in the lawsuit (*see Matter of New York State Clinical Lab. Assn. v Kaladjian*, 85 NY2d 346, 355 [1995]).

Realistically speaking, the goal of this special proceeding was to obtain payment of "withheld" monies and the "pended" claims. In view of the new "withhold," payment is not available. Further, the court has construed the regulation governing "pending" to give respondents additional time to resolve the issue of the "pended" claims. Additional damages are denied. Under these circumstances, the court finds that petitioner has not succeeded in acquiring a substantial part of the relief sought in this proceeding. While the delay involved herein in adjudicating the "pended" claims is unfortunate, it is not so intolerable as to warrant an award of attorneys' fees as a matter of law (*see Matter of Wittlinger* at 433). Accordingly, attorneys' fees must be denied. There is no need to consider the additional requirements under the EAJA.

Based on the foregoing, to the extent that the petition seeks an order of mandamus compelling the adjudication of all of petitioner's "pended" claims, and electronic remittance advice as to the date of processing each claim and the result of such processing, the petition is granted in accordance with this determination, and respondents shall have a total of 120 days from the date of receipt of a copy of this determination to comply.

The remainder of the petition is denied.