[928 NYS2d 269]

MICHAEL MULGREW, as President of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO, et al., Respondents, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Appellants.

First Department, July 28, 2011

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Alan G. Krams, Kristin M. Helmers* and *Emily Sweet* of counsel), for appellants.

*Stroock & Stroock & Lavan LLP,* New York City (*Charles G. Moerdler, Alan M. Klinger* and *Dina Kolker* of counsel), *Meyer, Suozzi, English & Klein, P.C.,* New York City (*Basil A. Paterson*

and *Barry Peek* of counsel), *Carol L. Gerstl*, New York City and *Adam S. Ross*, New York City, for respondents.

*Eric T. Schneiderman, Attorney General*, New York City (*Alison J. Nathan, Barbara D. Underwood* and *Benjamin N. Gutman* of counsel), for amici curiae.

**OPINION OF THE COURT**

Saxe, J.

Following the Court of Appeals' decision in *Campaign for Fiscal Equity v State of New York* (100 NY2d 893, 919 [2003]), finding that the State Legislature's financing system for the State's public schools failed to afford New York City public school children the constitutionally-mandated opportunity for a meaningful education, in 2007 the Legislature enacted a law entitled "Contract for Excellence" (*see* Education Law § 211-d, as added by L 2007, ch 57, part A, § 12). The Contract for Excellence program provided additional funding to underperforming school districts throughout the state, targeting the expenditure of those additional funds for approved enhancements (*id.*).

The statute includes one provision in particular, section 211-d (2) (b), that is applicable only to New York City's school district, the enforcement of which is at issue here. That provision required the New York City school district to create a five-year plan to reduce average class sizes, and specified the means by which class size reduction was to be accomplished, such as through creation or construction of more classrooms and school buildings, placement of more than one teacher per classroom, or by other means (Education Law § 211-d [2] [b] [ii]). This portion of the statute also included a provision that the "sole and exclusive remedy" for violation of this paragraph would be a petition to the State Education Commissioner, whose decision would be "final and unreviewable."

Pursuant to amendments to the statute in 2009, the Legislature added a requirement that the City school district "report to the commissioner on the status of the implementation of its plan to reduce average class sizes pursuant to subparagraph (ii) of this paragraph" (Education Law § 211-d [2] [b] [iii]). This newly-added subparagraph set forth the required contents of this report, specifying that it must identify all schools that received the targeted funds and indicate the amount each of those schools received; provide a detailed description of how the funds contributed to achieving class size reduction; report student enrollment and average class sizes for each school year;

and identify those schools that made insufficient progress toward achieving the class size reduction goals, and provide a detailed description of the additional actions that will be taken to reduce class sizes in such schools. The required report was to be submitted to the Commissioner by November 17, 2009. (*Id.*)

Further, subdivision (6) of section 211-d requires an addition to the annual audit report that the Board is required to submit each January 1st for the prior fiscal year pursuant to Education Law § 2116-a. In particular, the subdivision requires that the audit report contain a certification by either the City Comptroller or the accountant who conducted the audit stating that "the increases in total foundation aid and supplemental educational improvement plan grants have been used to *supplement, and not supplant* funds allocated by the district in the base year for such purposes" (Education Law § 211-d [6] [emphasis added]).

The Contract for Excellence legislation initially became effective on April 9, 2007, and remained in effect only through the 2009-2010 school year; the legislation was not extended to the 2010-2011 school year.

In compliance with the statute, the Board of Education (predecessor to the current Department of Education) adopted, and the State Education Department approved, Contracts for Excellence for each covered school year, which included the required "Five Year Class Size Reduction Plan," prepared and approved in 2007 and updated in 2008. This plan committed to specific expenditures earmarked for class size reduction; petitioners assert that, over the three school years the Contracts for Excellence were in effect, the Board of Education received approximately $760 million in contract funds specifically designated for class size reduction.

The CPLR article 78 petition, dated January 4, 2010, alleges that respondent Board of Education violated Education Law § 211-d by utilizing Contract for Excellence funds to offset budget cuts rather than to reduce class sizes as required by the statute. Petitioners offer in support of their claim the City Comptroller's report dated September 9, 2009, regarding its audit of the Department of Education's administration of the Early Grade Class Size Reduction Program (EGCSR), the funding program that preceded the Contract for Excellence program. In that report, the Comptroller stated that during the 2008-2009 school year, some $46.8 million of EGCSR funds were used to supplant tax levy funds. Specifically, the audit report explained that

"DOE used nearly $46.8 million of the $179.9 million in EGCSR funds earmarked for reducing early grade class size to supplant $46.8 million in tax levy funds. By using EGCSR funds in place of tax levy funds, schools free-up less restrictive money to spend on other budget items instead of further reducing classroom averages. The $46.8 million should have been spent on creating an additional 414 general education classes at 245 schools across the City, but these funds were improperly used instead to pay for teacher positions that would have existed without the EGCSR program." (City of New York, Office of the Comptroller, Audit Report on the Department of Education's Administration of the Early Grade Class Size Reduction Program, at 9 [Sept. 9, 2009], available at http://www.comptroller.nyc.gov/bureaus/audit/PDF_FILES/FM09_113A.pdf.)

Petitioners seek a declaration that respondent Board of Education has failed to comply with its obligations under Education Law § 211-d and its class size reduction plan, a determination that this failure is arbitrary and capricious, and a direction that it comply with these obligations.

Respondents moved to dismiss the petition on the grounds that (1) Supreme Court lacked original jurisdiction over this challenge, in view of the language in section 211-d (2) (b) (ii) that "the sole and exclusive remedy for a violation of the requirements of this paragraph shall be pursuant to a petition to the commissioner," and (2) petitioners failed to exhaust their administrative remedies at the State Education Department. The motion court denied the motion, concluding that the placement of the "sole and exclusive remedy" language within the framework of the statute indicates that it applies only to challenges to the Board's class size reduction *plan*, not to challenges regarding its *implementation* of that plan.

Respondents appeal from that ruling. For the reasons that follow, we reverse.

■ Initially, we reject petitioners' interpretation, adopted by the motion court, that the word "paragraph" in Education Law § 211-d (2) (b) (ii), where it refers to "a violation of the requirements of *this paragraph*" (emphasis added), applies only to a violation of subparagraph (ii). The word "paragraph" is not carelessly employed in this context; in formulating statutes, the

Legislature carefully refers to sections, subdivisions, paragraphs and subparagraphs. Indeed, the language of section 211-d establishes that this section of the Education Law is broken down into subdivisions (1) through (9), and that each subdivision is broken down into paragraphs denominated by lower case letters, which are in turn broken down into subparagraphs denominated by lower case roman numerals (*see* Education Law § 211-d [1] [e] [referencing "the requirements of subparagraph (vi) of paragraph a of subdivision two of this section"]). Consequently, the provision's reference to "this paragraph" is incontrovertibly intended to apply to the entire portion of the statute contained within section 211-d, subdivision (2), paragraph (b), which includes subparagraphs (i), (ii) and (iii). Therefore, contrary to the motion court's view, the portion of section 211-d (2) (b) (ii) that limits the remedy for a violation to a petition to the Commissioner applies to both that portion requiring the Board of Education to formulate a plan to reduce class sizes (§ 211-d [2] [b] [ii]) as well as that requiring it to report on the implementation of those plans (§ 211-d [2] [b] [iii]). Petitioners' argument that the Legislature intended to distinguish between the review of actions taken by the Board in the pre- and post-approval stages (i.e. the formulation and implementation) of its contract and plan is unavailing.

■ The Legislature's explicit limitation of available remedies for claimed violations by the Board of Education of the directive to formulate and implement a plan to reduce class sizes is well within the discretion of the Legislature.

> "[T]he constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program. In situations where the Legislature has made that choice, the Supreme Court's power is limited to article 78 review, except where the applicability or constitutionality of the regulatory statute, or other like questions, are in issue" (*Sohn v Calderon*, 78 NY2d 755, 767 [1991]).

Petitioners assert that while the Commissioner may have original jurisdiction* over challenges to either the class size reduction plan the Board presents under section 211-d (2) (b)

---

* The Education Law provision does not preclude Supreme Court's jurisdiction over the matter. "Even where judicial review is proscribed by statute, the courts have the power and the duty to make certain that the administrative

(ii), or to the reports it submits regarding its implementation of that plan under section 211-d (2) (b) (iii), their petition does *not* charge a violation of either subparagraph. Rather, they argue that they allege a violation of section 211-d (6).

Subdivision (6) of section 211-d requires that in the annual audit report that the Board is required to submit each January 1st for the prior fiscal year pursuant to Education Law § 2116-a, the City Comptroller or the accountant who conducted the audit include a certification "that the increases in total foundation aid and supplemental educational improvement plan grants have been used to *supplement, and not supplant* funds allocated by the district in the base year for such purposes" (emphasis added). Because the September 9, 2009 certification *could not* affirmatively make that statement, but rather, stated that during the 2008-2009 school year, some $46.8 million of contract funds "were used to supplant rather than supplement City tax levy funds," petitioners argue that a petition to the Commissioner was not necessary before commencing this proceeding.

■ However, in asserting their claimed violation, petitioners improperly rely on subdivision (6) of section 211-d. Indeed, that subdivision merely directs that the entity providing the annual audit include a certification to that effect. Assuming the truth of petitioners' allegations that the Board of Education used Contract for Excellence funds to replace previous sources of funding, that failure is not a direct violation of section 211-d (6) because it is not a failure to provide an audit report containing a certification from the auditor. The alleged improper use of Contract for Excellence funds is more accurately characterized as noncompliance with the dictates of section 211-d (2) (b) (iii), because if those funds were *not* spent on the contemplated class size reduction methods, it would be disclosed when the Board of Education reported on how the targeted funds were spent for the purpose of achieving class size reduction.

■ Even without the explicit "sole and exclusive remedy" clause in section 211-d (2) (b) (ii), the Legislature's intent to grant the State Education Department original jurisdiction over claimed failures of compliance with its directives is apparent from the overall legislative scheme. Section 211-d gives the

official has not acted in excess of the grant of authority given . . . by statute or in disregard of the standard prescribed by the legislature" (*Matter of New York City Dept. of Envtl. Protection v New York City Civ. Serv. Commn.*, 78 NY2d 318, 323 [1991], quoting *Matter of Guardian Life Ins. Co. of Am. v Bohlinger*, 308 NY 174, 183 [1954]).

State Education Department extensive oversight and monitoring responsibilities over the Contracts for Excellence, including approving each contract (§ 211-d [5]), and reviewing reports regarding implementation (§ 211-d [2] [b] [iii]) and audits (§ 211-d [6]). In addition, the statute directs the Department to "develop a methodology for reporting school-based expenditures by all school districts subject to the provisions of this section" (§ 211-d [9]). Indeed, the intent to give the State Education Commissioner original jurisdiction to adjudicate claims regarding alleged failures to comply with the Contract for Excellence requirements "is bolstered by the fact that all of the relevant and pertinent information to such . . . determination[s] is readily available to him and he possesses the requisite competence and expertise necessary for such . . . determination[s]" (*Matter of Onteora Cent. School Dist. at Boiceville [Onteora Non-Teaching Empls. Assn.]*, 79 AD2d 415, 417-418 [1981], *affd* 56 NY2d 769 [1982]).

■ Even if the State Education Department had not been given original jurisdiction over challenges such as that raised here, the doctrine of exhaustion of administrative remedies would in any event require that the review procedures dictated by Education Law § 211-d (7) and § 310 (7) be employed before permitting judicial review. Section 211-d (7) requires that the trustees, board of education or chancellor of each school district adopt procedures allowing "parents or persons in parental relation" to challenge implementation of the district's Contract for Excellence, by which an initial complaint may be brought to the principal or superintendent, with review by the chancellor, whose decision may in turn be appealed to the State Education Commissioner. Accordingly, parents and organizations suing as their representatives should be compelled to utilize this statutory review process to obtain a final administrative determination before seeking judicial review.

■ Education Law § 310 (7), which gives the State Commissioner of Education authority over grievances arising under the Education Law, does not provide for exclusive or original jurisdiction. Nevertheless, in this context, it would be consistent with the statute's scheme to require those petitioner organizations whose complaints do not fall under section 211-d (7) to exhaust their remedies under Education Law § 310 (7) before proceeding to court.

The motion court reasoned that the exhaustion of administrative remedies was not required because it deemed the question

presented as purely one of statutory interpretation. However, the issue raised by petitioners is whether the Board of Education improperly utilized funds allocated for the particular purpose of reducing class size to make up for reductions from its other funding sources. Determination of this point falls squarely within the purview of the State Education Department, as it will require review and comparison of budgets, expenditures, and funding allocations.

Petitioners argue that a petition to the State Education Department would be futile. While a proper showing of futility may justify making an exception to the exhaustion of remedies requirement (*see Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]), it is not established here. In support of their argument, petitioners assert that the State Education Department does not have the power to intrude into the New York City budgetary process and require the City to expend additional funds to ensure that the Board of Education spends Contract for Excellence funds as contemplated by the Legislature. Notably, however, no such assertion is made in the present article 78 petition. Therefore, this argument fails to establish that no relief would be possible through a petition to the Commissioner of Education.

Nor is there reason to conclude that requiring petitioners to exhaust their administrative remedy would cause irreparable harm (*Watergate II*, 46 NY2d at 57). Unlike *Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation* (87 NY2d 136 [1995]), there is nothing here to indicate either that the Commissioner would act less expeditiously than the court, or that the Commissioner would be unable to redress established violations of the statute.

Finally, petitioners cannot succeed in their efforts by citation to a September 22, 2010 New York Daily News article reporting that the State Education Department and the Board of Education covertly agreed in a February 23, 2010 letter to allow the Board to increase class sizes (Gonzalez, *City took money for nothing as it got aid to cut class sizes, OK'ed packing more students together*, New York Daily News, Sept. 22, 2010, at 14, available at http://www.nydailynews.com/ ny_local/education/2010/09/22/2010-09-22_money_for_nothing_exclusive_city_took_aid_to_cut_class_sizes_okd_packing _more_in.html). The article's report of steps taken by the Commissioner cannot be relied on to establish any inability on the Commissioner's part to properly determine petitioners' claimed violations of Education Law § 211-d.

Accordingly, the order of the Supreme Court, Bronx County (John A. Barone, J.), entered July 29, 2010, which denied respondents' cross motion to dismiss the article 78 proceeding, should be reversed, on the law, without costs, the cross motion granted and the proceeding dismissed.

MAZZARELLI, J.P., ACOSTA and FREEDMAN, JJ., concur.

Order, Supreme Court, Bronx County, entered July 29, 2010, reversed, on the law, without costs, the cross motion granted and the proceeding dismissed.