OPINION OF THE COURT
Paul G. Feinman, J.
Plaintiffs in this action are concerned parents of school-age children who attend one of the public schools currently located at the Brandéis Educational Campus (Brandéis Campus). Defendants are the Chancellor of the New York City public school system as well as the executive branch agency charged with overseeing educational policy for the City of New York. Intervenor-defendant Success Academy Charter School (Success Academy) is a charter school which is intended to serve kindergarten and elementary school children. In this lawsuit, plaintiffs seek, among other things, to prevent the co-location of Success Academy at the Brandéis Campus during the 2011-2012 school year. Brandéis Campus currently houses five public high schools.[1] The court previously denied plaintiffs’ application for a temporary restraining order and motion for a preliminary injunction. The plaintiffs now seek partial summary judgment. Upon a search of the record, the court denies plaintiffs’ motion and dismisses the action in its entirety.
I. Background and Arguments
The first attempt to halt this proposed co-location was made in response to a vote of the Panel for Educational Policy (PEP) made on February 2, 2011 (February PEP vote), approving the co-location. On April 8, 2011, plaintiffs brought a CPLR article 78 proceeding against defendants challenging the co-location, entitled Steglich v Board of Educ. of the City School Dist. of the City of NY. (index No. 104300/11 [Steglich 7]). Defendants opposed the challenge.
On June 1, 2011, defendants abandoned the original PEP vote, and provided, in the same month, a new notice of the proposed co-location, with a revised educational impact statement (EIS), and revised building utilization proposal (BUP). On June 27, 2011, after public hearings were duly held on the revised proposal, PEP again voted to approve the co-location (June PEP vote).
*306 Following these revisions, and before the June PEP vote, plaintiffs commenced the present action. On June 30, 2011, plaintiffs filed an amended complaint, seeking to have the June PEP vote declared a nullity.[2]
Plaintiffs argue that (1) the Department of Education lacked the authority to revise the EIS and BUP after the February PEP vote, in that the February PEP vote was a final determination of the issue on the administrative level; (2) the revised EIS and BUP are improper, because, under the Education Law, they are untimely, having been brought less than six months before the start of the school year; (3) the revised EIS impermissibly includes a school not mentioned or addressed in the original EIS; and (4) defendants did not comply with Education Law notice requirements prior to the June PEP vote, by providing a notice of hearing in English only, and then, purportedly in an untimely manner, publishing the notice in Spanish. On this motion, plaintiffs seek partial summary judgment voiding the June PEP vote.
In response, defendants, and intervenor-defendants (all parents of school-age children who are slated to attend Success Academy, and who, as a result, support the co-location), argue that the Success Academy would be placed in an under-utilized space within the Brandéis Campus, and so cause no harm to the existing schools. For example, some of the rooms allocated to Success Academy are currently being used to store file cabinets and extra furniture. They maintain that this court lacks jurisdiction over plaintiffs’ action and the present motion, because (1) the Commissioner of the State Education Department (SED) has exclusive, original jurisdiction over the issue; (2) plaintiffs have failed to exhaust their administrative remedies, in that they did not refer their grievance with the PEP vote to the Commissioner, in derogation of the Education Law; or (3) the court should defer to the Commissioner as a matter of primary jurisdiction.
On the merits, defendants argue that (1) they had the right to revise the EIS and BUP after the February PEP vote; (2) the revised EIS and BUP were timely brought; (3) the revised EIS did not include a new school, as the Young Adult Borough Center is a “program” not a “school”; and (4) defendants complied with a11 statutoiy notice requirements, in that the notice of hearing concerning the revised EIS and BUP was timely, *307 despite the fact that a Spanish version appeared later than the original notice.
II. Discussion
In a recent decision of this court (Mulgrew v Board of Educ. of the City School Dist. of the City of N.Y., 33 Misc 3d 350 [2011]), this court found that it had concurrent jurisdiction with the Commissioner to address the validity of a PEP vote, despite language in Education Law § 2853 (3) (a-5) and § 310, citing that a dispute under these sections “may” be directed to the Commissioner.
In a totally different lawsuit between the same parties, concerning class size, Mulgrew v Board of Educ. of the City School Dist. of the City of N.Y. (88 AD3d 72 [2011] [Mulgrew 2]), the Appellate Division, First Department, very recently released a decision which makes findings and reaches conclusions which necessarily require this court to reconsider its earlier interpretation of the Education Law provisions concerning the SED Commissioner’s jurisdiction. This court’s earlier analysis was conducted without benefit of controlling or persuasive appellate authority interpreting the relevant Education Law provisions.
In Mulgrew 2, the Appellate Division found that a proceeding brought to decide a dispute involving Education Law § 211-d should have been brought before the Commissioner before it was brought before the court. The language of the statute was extremely specific as to this point, and so, the Court’s determination is not surprising.
Education Law § 211-d, denominated “Contract for excellence,” is concerned with the allocation of funds to the goal of reducing class sizes in New York City. Reduction of class size was to be accomplished “through creation or construction of more classrooms and school buildings, placement of more than one teacher per classroom, or by other means (Education Law § 211-d [2] [b] [ii]).” (Mulgrew 2, 88 AD3d at 75.) The statute provides that “the ‘sole and exclusive remedy’ for violation of this paragraph would be a petition to the State Education Commissioner, whose decision would be ‘final and unreviewable.’ ” (Id., quoting Education Law § 211-d [2] [b] [ii].)
Inasmuch as this is not the section of the Education Law at issue in the present case, were this all the Appellate Division had held, this court would have no more guidance as to how to *308 proceed in this action than it did previously. However, the Court went on to determine that the petitioners in the Mulgrew 2 class-size case had also failed to exhaust their administrative remedies in approaching the court in the first instance, even if Education Law § 211-d (2) (b) (ii) did not apply, because under Education Law § 310 (7), a statute which lists the issues which “may” be brought to the attention of the Commissioner, the matter was particularly within the expertise of the Commissioner. The Court reflected that Education Law § 310 (7) “does not provide for exclusive or original jurisdiction,” but that it would be “consistent with the statute’s scheme to require those petitioner organizations whose complaints do not fall under section 211-d (7) to exhaust their remedies under Education Law § 310 (7) before proceeding to court.” (Mulgrew 2, 88 AD3d at 80.)
The Court reasoned that
“the issue raised by petitioners is whether the Board of Education improperly utilized funds allocated for the particular purpose of reducing class size to make up for reductions from its other funding sources. Determination of this point falls squarely within the purview of the State Education Department, as it will require review and comparison of budgets, expenditures and funding allocations.” (Id.)
In the present action, the court is faced with issues regarding how the Department of Education allocates its resources for the purpose of placing new schools within already existing schools, with emphasis on fairness of the allocations. Although, as this court previously found, and the Appellate Division clarifies, there is indeed concurrent jurisdiction over these issues, the determination in Mulgrew 2 appears to show a decided reluctance on the part of the higher court to take on disputes of this nature. In other words, the Appellate Division’s decision makes clear that, in the first instance, disputes of this nature should be heard by the executive branch agency with the relevant expertise, here the State Education Department Commissioner. In short, it appears that the issues raised by the co-location of Success Academy in the Brandéis Campus should be heard in the first instance by the Commissioner, and not by the court. If aggrieved by the Commissioner’s final determination, the parties have appropriate remedies at that juncture to seek judicial review of his actions.
*309 III. Conclusion
For the reasons explained above, plaintiffs’ motion must be denied, and upon a search of the record pursuant to CPLR 3212 (b), intervenor-defendants’ informal request for summary judgment granted, and the action dismissed. It should be emphasized that this dismissal does not constitute any factual finding by this court as to the propriety of the planned co-location; rather, the action is dismissed because procedurally, the court finds that in light of Mulgrew v Board of Educ. of City School Dist. of the City of N.Y. (88 AD3d 72 [2011]), the State Education Department Commissioner should be permitted to exercise his concurrent jurisdiction in the first instance. Upon a final determination by the Commissioner, any aggrieved party may, of course, exercise any right to judicial review it may have by statute.
Accordingly, it is ordered that the motion support office and the Clerk of the Court are directed to accept the notice of motion e-filed as document No. 84 as properly filed and to assign this motion an appropriate motion sequence number forthwith and to then file this decision and order as resolving said motion; and it is further ordered that the motion for partial summary judgment brought by plaintiffs is denied; and it is further ordered that, pursuant to CPLR 3212 (b), summary judgment dismissing the complaint is granted to defendants and intervenor-defendants; and it is further ordered that the complaint is dismissed with costs and disbursements to be accorded to defendants and intervenor-defendants as taxed by the Clerk of the Court, upon presentation of an appropriate bill of costs.

. There is a dispute as to whether the Young Adult Borough Center, which is housed at Brandéis, is a “school” or a “program,” as discussed infra.

. All parties agree that Steglich 1 has been abandoned as moot.