OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Pursuant to the Equal Access to Justice Act (CPLR art 86), a court may award reasonable attorneys’ fees to a “prevailing party” in a suit against the State, unless the position of the State was “substantially justified or * * * special circumstances make an award unjust” (CPLR 8601 [a]). In the case before us, we must determine whether the courts below properly denied petitioner’s request for attorneys’ fees in connection with his litigation for public assistance benefits. We hold that the Appellate Division did not abuse its discretion in denying petitioner an award of counsel fees based on its conclusion that the position of the State was substantially justified.
 

 Until June 1995, petitioner William Wittlinger received federal and state public assistance benefits by mail at a Manhattan mail drop for the homeless. As a beneficiary, he had to comply with the employment requirements of the Work Experience Program
 
 (see generally
 
 former Social Services Law § 164). On June 10, 1995, Wittlinger moved into an apartment and so informed the New York City Department of Social Services (DSS). Nonetheless, the City DSS thereafter attempted to notify Wittlinger of a job availability by sending the notice to the Manhattan mail drop. Wittlinger did not receive it, and accordingly did not report for work. In response, the City DSS cut off his benefits. Wittlinger requested an administrative fair hearing, after which the State Department of Social Services
 
 [1]
 
 reversed the City DSS’s decision and reinstated his benefits on January 3, 1996.
 

 
 *430
 
 Later that year, however, the scenario repeated itself. Wittlinger rented a post-office box and directed the City DSS to send correspondence there. On February 13, 1996, however, the City DSS erroneously sent the next job availability notice to the Manhattan mail drop. Again, Wittlinger did not receive the notice and did not report for work. Again, the City DSS cut off his benefits, and on April 9, 1996, Wittlinger took an administrative appeal to the State. This time, however, Wittlinger was unsuccessful, and on May 15, 1996 the State affirmed the termination of benefits.
 

 In September 1996, Wittlinger filed a CPLR article 78 petition to annul the administrative determination. After Supreme Court transferred the petition to the Appellate Division, the State stipulated to grant Wittlinger a de novo administrative fair hearing, which the State conducted on July 9 and September 9, 1999. On September 30, 1999, the State issued its decision, holding that Wittlinger had improperly been denied benefits because the City DSS sent the job notices to the wrong address. The decision ordered the payment of those benefits, retroactive to 1996 — an amount totaling over $15,000.
 

 The State sent the City DSS notice of the administrative fair hearing determination, but the City DSS sent the notice to the wrong public assistance center for issuance of the funds.
 
 [2]
 
 Consequently, Wittlinger did not receive the money and repeatedly complained about the delay. Between October 12 and November 17, 1999, the State sent three letters to the City DSS, ordering it to comply with the decision. None of these measures produced the desired result, and on November 17, 1999, Wittlinger brought this article 78 proceeding to compel the City DSS to comply with the September 30, 1999 administrative fair hearing determination.
 

 On December 1, 1999, the State contacted the City DSS and was informed that the funds would be available for Wittlinger “hopefully by tomorrow.” Over the next week, Wittlinger received $12,712.50 in retroactive benefits. He received an additional $1,175 on December 31, 1999. Wittlinger received the
 
 *431
 
 last of the money due him on February
 
 2,
 
 2000, when the City DSS sent him $1,184 in retroactive food stamp benefits.
 

 In January 2000, the state and city agencies moved to dismiss Wittlinger’s article 78 petition, contending that there remained no reason for a court to order compliance with the administrative fair hearing determination. On March 29, 2000, Supreme Court agreed and dismissed the petition as moot. The court also denied Wittlinger’s application for attorneys’ fees.
 

 Wittlinger appealed, arguing that he prevailed in the proceeding and should have been awarded attorneys’ fees. He asserted that his article 78 proceeding caused the agencies to give him the retroactive benefits and capitulate to the requirements of the administrative fair hearing determination. He based his claim for attorneys’ fees on the “catalyst” theory, under which litigants will be deemed to have prevailed (and are thus entitled to attorneys’ fees) when, as a result of litigation, the governmental defendant yields much or all of the relief sought in the suit. On two grounds, the Appellate Division affirmed Supreme Court’s denial of counsel fees. The Court reasoned that the United States Supreme Court’s decision in
 
 Buckhannon Bd. & Care Home, Inc. v West Virginia Dept. of Health & Human Resources
 
 (532 US 598 [2001]) precluded the award of attorneys’ fees under the catalyst theory. It also held that the position of the State was substantially justified. We need address only the second ground, which resolves this appeal.
 

 The Legislature enacted the Equal Access to Justice Act to help litigants secure legal assistance to contest wrongful actions of state agencies
 
 (see
 
 Governor’s Mem approving L 1989, ch 770, 1989 McKinney’s Session Laws of NY, at 2436). By allowing victorious plaintiffs to gain attorneys’ fees, the statute seeks to help those whose rights have been violated but whose potential damage awards may not have been enough to induce lawyers to fight City Hall. The Legislature, however, did not intend to provide every plaintiff — or even every “prevailing” plaintiff — with attorneys’ fees. Instead, fees “shall” be awarded only where the plaintiff “prevail [s]” and where the agency’s position was not “substantially justified” and no “special circumstances make an award unjust” (CPLR 8601 [a]).
 

 Accordingly, our review is limited to determining whether the Appellate Division abused its discretion in concluding that
 
 *432
 
 the State’s position
 
 [3]
 
 was “substantially justified”
 
 (see Matter of New York State Clinical Lab. Assn. v Kaladjian, 85
 
 NY2d 346, 356 [1995]). CPLR 8602 (e) defines “[p]osition of the state” to mean “the act, acts or failure to act from which judicial review is sought.” Here, the position of the State is its conduct, and that of the City DSS, in failing promptly to comply with the September 30, 1999 administrative fair hearing decision.
 

 Wittlinger argues that the Appellate Division ruling constitutes an abuse of discretion because there was no good reason for the 47-day postdecision delay. The State has conceded that Wittlinger was entitled to the benefits, and had urged the City DSS to issue them. The State argues that the delay, although lengthy, was not so unreasonable as to warrant an award of fees. Wittlinger maintains that under these circumstances the State’s “position” cannot be “substantially justified.”
 

 Weighing heavily on the other side, however, is the Appellate Division’s assessment of the events, and its conclusion that a 47-day delay — even where caused by bureaucratic red tape — was sufficiently explained and not so egregious as to fall outside the realm of substantial justification. We are unable to say that this determination was an abuse of discretion.
 

 Whether prolonged inaction will fail the substantial justification test necessarily depends on the circumstances. In accepting the Appellate Division’s determination as to the delay, we do not treat the inquiry as exclusively temporal. Instead, in each case a reviewing court must determine how long it should have taken the agency to act, considering the reasons offered by the agency for the delay.
 

 Here, the State attempted numerous times to prod the City DSS to issue Wittlinger his benefits. The State sent the City DSS three electronic letters notifying it of the administrative fair hearing determination and that Wittlinger had yet to receive the money. After the City sent the administrative fair hearing decision to the correct public assistance center, Wittlinger’s benefits were restored.
 

 Agency delays do not automatically give rise to liability for attorneys’ fees. While, in theory, the State could have signaled its disapproval of the City DSS’s delay by withholding funds from the social services district
 
 (see
 
 Social Services Law § 20 [3] [e]) or removing or disciplining a local commissioner for
 
 *433
 
 dereliction of duty
 
 (see
 
 Social Services Law § 34 [4]), the Equal Access to Justice Act does not require either action, at least absent the most exceptional of circumstances. In a perfect world, Wittlinger would have gotten his benefits promptly. There is no requirement, however, that a state agency invoke the harshest measures against a city agency even where there has been a regrettable delay in implementing an administrative fair hearing decision.
 

 The Appellate Division concluded, in essence, that agency delays are all but unavoidable given the high volume of transient recipients and the difficulty of keeping records relating to thousands of recipients whose addresses are not always permanent. While this disturbing pattern of failures merits no endorsement, it was not so intolerable as to warrant the award of attorneys’ fees as a matter of law. We conclude that the Appellate Division was within its discretion in ruling as it did.
 

 In light of our holding, we need not reach the “catalyst” issue and Buckhannon’s impact on the interpretation of the New York Equal Access to Justice Act. Accordingly, while we appreciate the extensive efforts and interest of the amici, we neither endorse nor repudiate the Appellate Division’s alternative holding as to the vitality of the catalyst theory in proceedings of this kind.
 

 The order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Graffeo and Read concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . Several state agencies are involved in this dispute. For convenience, we refer to all of them as the “State.”
 

 [2]
 

 . According to the Commissioner of the City DSS, Wittlinger’s case had been assigned to the Amsterdam Public Assistance Center, Center 24. In 1997, that center was closed and became a division of AIDS Services Center. Wittlinger’s case should then have been handled by a new center, Center 13. Unfortunately, the City Fair Hearing Compliance Control Unit mistakenly sent the decision to Center 24. Eventually it was rerouted to the proper center.
 

 [3]
 

 . That the DSS is a city agency, instead of being directly under the control of the State, is of no moment
 
 (see Matter of Thomasel v Perales,
 
 78 NY2d 561, 570 [1991]).