Sweeny, J. (dissenting).
The petitioner in this appeal asks us *94 to revisit the issue of the availability of attorneys’ fees under the State EAJA and our decision in Matter of Auguste v Hammons (285 AD2d 417 [1st Dept 2001]), and adopt the “catalyst theory” as a basis for awarding fees pursuant to the State EAJA. The majority agrees with petitioner’s position. For the reasons stated herein, I must dissent.
Petitioner is a recipient of public assistance from the New York City Human Resources Administration (HRA). On September 16, 2010, the city respondents issued a notice of decision reducing the amount of the “[Restricted shelter payment” component of petitioner’s public assistance benefits by approximately $200 per month. She requested a fair hearing before the New York State Office of Temporary and Disability Assistance (OTDA) to challenge this reduction in benefits. At the hearing, HRA stipulated to withdraw its notice of decision and to restore any lost benefits retroactive to the date of its initial action. On November 29, 2010, OTDA issued a decision after fair hearing (DAFH) ordering the city respondents to comply with the stipulation. The city respondents failed to comply.
On March 28, 2011, petitioner’s counsel wrote to OTDA advising that the city respondents were still not in compliance with the DAFH and requested that it direct them to make the required retroactive payments. By letter dated March 20, 2011, OTDA advised petitioner that it received a report from the city respondents that “the local department of family assistance has taken appropriate action to comply with the decision’s directives” and that they considered the matter as “satisfactorily resolved.”
Petitioner commenced this CPLR article 78 proceeding on May 6, 2011, seeking enforcement of the DAFH and attorneys’ fees pursuant to the provisions of CPLR article 86, known as the Equal Access to Justice Act (EAJA). On May 20, 2011, the city respondents retroactively restored petitioner’s shelter allowance benefits. It thereafter moved to dismiss the article 78 proceeding on mootness grounds.
The motion court granted the motion to dismiss. With respect to her application for attorneys’ fees, petitioner argued that she was a “prevailing party” under the “catalyst theory”* because her petition was not moot when filed, but was only rendered moot by actions taken by respondents as a result of the filing. *95 She argued that she was therefore entitled to fees. The court rejected this argument, relying on our decision in Matter of Auguste v Hammons (285 AD2d 417 [2001]), which expressly rejected the catalyst theory as a basis for recovering attorneys’ fees under the State EAJA.
The majority frames the issue in this case as “whether the competing goals of expanding access to the courts through the availability of attorneys’ fees while maintaining mechanisms to prevent a raid of the State’s coffers could not both be accommodated by interpreting the State EAJA as permitting the award of fees under the catalyst theory.” Unfortunately, by declining to follow Auguste and adopting the so-called “catalyst theory” as a basis for awarding such fees, the majority creates the very conditions that will inevitably lead to such raids.
The majority has traced the legislative history of this statute accurately. Where I differ is in the conclusions to be drawn from that history.
Initially, I note that all of the considerations now raised by the petitioner and majority were available when we unanimously decided Auguste. Moreover, we revisited the catalyst theory in Matter of Wittlinger v Wing (289 AD2d 171 [1st Dept 2001], affd 99 NY2d 425 [2003]) and again, relying on Buckhannon Board & Care Home, Inc. v West Virginia Dept. of Health & Human Resources (532 US 598 [2001]), categorically rejected it as a basis for awarding counsel fees. Although Buckhannon had not been decided at the time of our decision in Auguste, it did form the basis of our decision in Wittlinger. Nothing has changed since that time and the majority, although drawing a different conclusion than I from the affirmance of Wittlinger, has advanced no compelling reason to overturn either precedent.
I take no issue with the majority’s observation that the State EAJA was intended to be, and as enacted is, similar, but not identical, to the Federal EAJA. That being said, nothing in the State EAJA requires that New York courts interpreting it strictly adhere to the federal judiciary’s understanding of the Federal EAJA—on which New York’s statute was modeled—as of 1989, when the New York counterpart was enacted. At the time of the State statute’s adoption, the catalyst theory was a generally accepted standard in evaluating whether to award counsel fees under the Federal EAJA. According to the petitioner, this theory is forever part of the state statute, since it was more or less the rule of interpretation of the model statute (i.e., the Federal EAJA) at the time of the adoption of the state *96 statute and was incorporated into the statute by the language explicitly patterning it on the Federal EAJA “and the significant body of case law that has evolved thereunder” (CPLR 8600). Under petitioner’s interpretive theory, the meaning of the state statute remains locked in place, even if the model statute evolves in a different direction.
A plain reading of CPLR 8600 does not support petitioner’s interpretation. So convoluted a construction of the statute could only be justified if the statute contained explicit language to that effect. No such language appears in the statute. Indeed, the plain language of the statute is as consistent with respect for federal case law as it evolves over time as it is with the “frozen in time” interpretation urged by petitioner. To adopt petitioner’s argument would not only prevent New York courts from following federal precedents after 1989 if they chose to do so, but would also prevent them from following their own assessment of the statute’s intent in favor of a locked-in view of its meaning.
Significantly, the majority’s observation that the State EAJA is “similar to”—rather than “identical to”—the federal statute and related case law gives New York courts the freedom to interpret article 86. In short, New York courts should not be “locked in” to an interpretation of this statute as of the date of its adoption. The differences between the two statutes do not prevent us from following the United States Supreme Court’s 2001 rejection of the catalyst theory as a basis for the award of attorneys’ fees under the Federal EAJA (see Buckhannon, 532 US at 598).
The majority argues at length that we are not required to accept Buckhannon’s rejection of the catalyst theory. True enough. By the same token, I fail to see any reason not to adopt Buckhannon’s, sound logic.
As noted, the State EAJA brings into play two broad underlying public policies: to facilitate access to the judicial system for the poor and to maintain adequate restraints on the amount of fees awarded. Although the majority concedes that the state statute is intended to be more restrictive on the issue of counsel fees than its federal counterpart (see Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 355 [1995]), it proceeds to adopt the implementation of the broad and ill defined standard of the catalyst theory as the basis for awarding such fees. In effect, the adoption of the catalyst theory constitutes a policy decision aimed not at harmonizing the compet *97 ing interests of the EAJA but at giving precedence to an essentially open-ended method of encouraging actions against municipal agencies and their treasuries. This is not the function of the judiciary. As discussed herein, such policy determinations are the province of the legislature.
The basis of petitioner’s request for attorneys’ fees in this case squarely falls within the claim that the city respondents delay in complying with the DAFH necessitated the bringing of this action. While I understand and sympathize with the frustration that can result from the often glacial movement of city and state agencies, and do not in any way condone or excuse delays in governmental action, the use of the catalyst theory as a method of determining whether to award attorneys’ fees is not the appropriate remedy to punish such delays or encourage prompt state action. This unfortunate fact of government life was specifically acknowledged by the Court of Appeals in affirming our decision in Wittlinger and deserves quoting at length:
“Agency delays do not automatically give rise to liability for attorneys’ fees. While, in theory, the State could have signaled its disapproval of the City DSS’s delay by withholding funds from the social services district (see Social Services Law § 20 [3] [e]) or removing or disciplining a local commissioner for dereliction of duty (see Social Services Law § 34 [4]), the Equal Access to Justice Act does not require either action, at least absent the most exceptional of circumstances. In a perfect world, [petitioner] would have gotten his benefits promptly . . . The Appellate Division concluded, in essence, that agency delays are all but unavoidable . . . While this disturbing pattern of failures merits no endorsement, it was not so intolerable as to warrant the award of attorneys’ fees as a matter of law” (99 NY2d at 432-433).
Although the delay in this case exceeds that in Wittlinger, the same logic applies, particularly since petitioner has not shown that she suffered any harm from the delay in providing her landlord with the retroactive payments in question.
Nor do I read Wittlinger as creating a presumption that all but the most egregious agency delays fall within the “substantial justification” exception to the award of attorneys’ fees. On the other hand, the majority’s adoption of the catalyst theory ere *98 ates a presumption that any delay will form the basis of an enforcement action leading to attorneys’ fees.
Further militating against the concept of using the threat of attorneys’ fees to punish an agency for dilatory action is the fact that sufficient remedies such as costs and sanctions exist for those cases in which the agency unjustifiably refuses to act pursuant to a settlement or court order. Despite the majority’s contention that my position advocates “the eradication of the entire fee-shifting statute,” I certainly agree that, in appropriate cases, attorneys’ fees may also be properly awarded pursuant to the statute. This, however, is not such a case. There is nothing in the record that indicates the reason for the city respondents delay in complying with the. stipulation of settlement. Unlike the Department of Social Services in Wittlinger, the city respondents in this case are silent as to the cause of the delays, and we are in no position to speculate whether their positions were “substantially justified” or were merely the result of inattention, excessive case load or other factors. Likewise, there is nothing to indicate why the commencement of this proceeding was the appropriate remedy under these circumstances. The state respondent was advised at one point by the petitioner that the city respondents had not complied with the DAFH. It promptly made inquiry and received assurances that the matter was being addressed. Another letter to the State that the city respondents had still not complied may very well have obviated the need for this action. In short, we are simply not in a position to perform the necessary review set forth in Wittlinger.
This of course highlights the crux of the problem created by the adoption of the catalyst theory in awarding attorneys’ fees under the EAJA. The prevailing party, as defined by statute, can essentially set its own time frame for compliance by the state agency, since there is no time limitation set by statute or regulation. Once the prevailing party puts its application for fees into motion, any compliance by the municipal agency would be the result of the “catalyst” of such application, even if compliance was already in the works. As the majority acknowledges, Wittlinger stated that “[wjhether prolonged inaction will fail the substantial justification test necessarily depends on the circumstances . . . [I]n each case a reviewing court must determine how long it should have taken the agency to act, considering the reasons offered by the agency for the delay” (99 NY2d at 432). The agency would therefore have to demonstrate *99 to the satisfaction of a reviewing court, in each case, that any delay was justifiable. The potential for abuse is patent. This requirement would place an undue burden on an already thinly stretched judiciary and overburdened agency to determine in each case, without any clear statutory or regulatory guidelines, whether the agency’s actions were substantially justified, or whether compliance was solely the result of the action commenced by the petitioner. The result would be clearly at odds with the articulated broad public policy of limiting awards of attorneys’ fees under the State EAJA, and would inevitably lead to conflicting decisions. This is merely demonstrative of one of the unintended secondary consequences of the adoption of the catalyst theory by the majority.
18 NYCRR 358-6.4 (c) provides that, upon a complaint of failure to comply with an order, the commission will secure compliance “by whatever means is deemed necessary and appropriate.” The regulation does not envision an action commenced by a private petitioner as such a means. Nor does it set forth a penalty for an agency’s delayed compliance. By allowing the catalyst theory to form the basis for attorneys’ fees, the majority in effect is rewriting the regulation to provide just such a penalty. Indeed, as noted, the Court of Appeals in Wittlinger recognized that the State’s options to penalize a tardy municipal agency, such as in this case, are realistically limited, as distasteful as that result may be. The majority’s decision today, in effect, mandates a penalty where the agency regulations and State Legislature do not. Rewriting an agency regulation in the guise of statutory construction is not the role of the judiciary.
The majority argues that if the legislature wanted to preclude application of the catalyst theory it would have done so in the text of the statute. But this is a non sequitur and contradicts the majority’s own theory of statutory interpretation. As noted above, the catalyst theory was generally accepted by the federal courts at the time of the State EAJA’s adoption in 1989. Buckhannon’s rejection of the catalyst theory came in 2001. The Supreme Court’s rejection of the theory some 12 years after the enactment of the State EAJA could not have been foreseen by the legislature and to argue otherwise reads history backwards. The legislature had no reason in 1989 to believe that the catalyst theory would be rejected. Contrariwise, one could argue with equal justification that, had the legislature seen fit to enshrine the theory as the basis for attorneys’ fees, it could have done so, and would have done so in the 12 years since Buckhannon was decided, and the almost 10 years since Wittlinger was decided.
*100 The majority’s argument in this regard, however, has inadvertently revealed the only proper method of resolving the issue before us.
The majority contends that the Court of Appeals impliedly sanctioned the use of the catalyst theory in its decision in Wittlinger. Yet it also acknowledges that the Court affirmatively refused to either endorse or reject it, despite the fact that the issue was squarely before it. Had the Court done so, it would have as the majority does now, made a policy decision elevating one conflicting public policy determination over the other, a decision that, in my view, is the province of, and best left to, the legislature. Paradoxically, the majority agrees with my “more apt . . . observation that only the legislature should make such a public policy determination” while simultaneously proceeding to do exactly what the Court of Appeals has declined to do.
I would therefore affirm the order and judgment of Supreme Court.
DeGrasse, Freedman and Richter, JJ., concur with Mazzarelli, J.E; Sweeny, J., dissents in a separate opinion.
Order and judgment (one paper), Supreme Court, New York County, entered July 18, 2011, reversed, on the law, without costs, the application granted, and the matter remanded for a hearing on the appropriate amount of counsel fees to be awarded to petitioner.
Motion to file amicus curiae brief granted.

 The “catalyst theory” posits that a private party “prevails” against the State when the State gives the party the relief demanded as a result of the party’s initiation of a lawsuit.