Garcia, J.
(dissenting). I agree with the plurality that the conduct of the defendants in this case was egregious. That plaintiff received truly reprehensible treatment, however, does not entitle her attorneys to recoup fees under a statute that does not, and has never been used to, provide for such an award in this type of case.
I.
Plaintiff, one of the first women to become a state trooper m New York, experienced years of discrimination and harassment during her employment by defendants State of New York and the New York State Division of State Police. This long period of mistreatment included vandalism of plaintiff’s property, the posting of offensive cartoons depicting plaintiff performing sexual acts, and a physical attack by a coworker that placed her in the emergency room. After attempts to seek redress of these wrongs internally, plaintiff filed suit in 1995 alleging sex discrimination, sexual harassment, retaliation, and hostile work environment and seeking $15,000,000 in damages as well as back pay, front pay, benefits, injunctive relief, and reinstatement. Before the suit was filed, plaintiff obtained two at *404 torneys, one of whom (Emmelyn Logan-Baldwin) had extensive experience in discrimination law cases. Both attorneys signed a contingency fee contract with plaintiff, agreeing to share one third of any award received.
Plaintiff’s complaint attached numerous exhibits that documented the harassment she experienced. In response to plaintiff’s complaint, the State defendants denied wrongdoing. After “obstructionist” and dilatory conduct on the part of the State, a Court later found that defendants “ha[d] repeatedly disobeyed discovery orders of Supreme Court and [the Appellate Division]” and so struck defendants’ answer (286 AD2d 881, 882-883 [4th Dept 2001]; 261 AD2d 843, 845 [4th Dept 1999]). Judgment was entered in plaintiff’s favor on the issue of liability.[1]
In 2005, after a dispute arose, plaintiff fired Emmelyn Logan-Baldwin.[2] After her former attorney refused to provide plaintiff with the case file, plaintiff and her remaining attorney moved to obtain the file and her former attorney cross-moved for a lien. A judge ordered plaintiff’s former attorney to turn the case file over to plaintiff’s remaining attorney and placed a charging lien on any proceeds recovered in the pending suit. At that point, the former attorney’s bill for her services was approximately $490,000.
On the eve of trial in 2006, in a letter responding to a general question about fees posed by the trial judge “[a] few months ago,” plaintiff’s remaining attorney raised for the first time the theory that the case might qualify for a fee award under the Equal Access to Justice Act (CPLR art 86) (EAJA). In the letter, that attorney inquired about “defendants’ position concerning settlement” “in light of this information [that plaintiff may be entitled to fees]” and stated that any “[s]erious settlement talks really means getting beyond a 6 figure amount! ].” The parties did not reach a settlement. After a trial on damages in 2006, a jury awarded plaintiff approximately $800,000 total for lost past earnings, lost past retirement earn *405 ings, lost future retirement benefits, and past pain and suffering.
In 2008, plaintiff, her remaining attorney, and her former attorney moved for attorneys’ fees and expenses under the EAJA. The former attorney asked for more than $1,000,000 in attorneys’ fees, including “enhanced fees” of $180,663 for what she described as “ ‘bad faith’ and frivolous and dilatory conduct of the State of New York and the New York State Police in their defense of plaintiffs’ claims.”[3] Supreme Court denied the motion, finding that the EAJA did not apply to plaintiff’s claim for compensatory damages. A divided Appellate Division reversed, holding that plaintiff’s claim was eligible for attorneys’ fees under the EAJA (76 AD3d 188 [2010]). This holding was based on the Appellate Division majority’s determination that the plain meaning of the EAJA compelled a conclusion that it applied to this case; that the statute’s Court of Claims exclusion would be superfluous if the EAJA was limited to CPLR article 78 proceedings and declaratory judgment actions because those actions cannot be brought in the Court of Claims anyway; and that the legislative history supported its interpretation. Two Justices dissented, noting conversely that the statute’s plain meaning and legislative history demonstrated that the EAJA was inapplicable to plaintiff’s suit.
II.
The EAJA, which also bears the title “Counsel Fees and Expenses in Certain Actions Against the State,” provides that “a court shall award to a prevailing party . . . fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust” (CPLR 8601 [a]). Section 8602 provides corresponding definitions for terms in the statute and defines “action” as “any civil action or proceeding brought to seek judicial review of an action of the state as defined in subdivision (g) of this section, including an appellate proceeding, but does not include an action brought in the court of claims” (CPLR 8602 [a]).
The crux of this dispute concerns the clause “any civil action or proceeding brought to seek judicial review” and whether *406 that includes suits for compensatory damages. Essentially, the plurality reads the statute to say “any civil action or any proceeding brought to seek judicial review” (see plurality op at 393). Yet the definition of “civil action” enacted by the legislature limits the EAJA’s applicability to either civil actions brought to seek judicial review of an action of the state, or proceedings brought to seek judicial review of an action of the state. This limitation accordingly cabins the applicability of the EAJA to actions seeking to challenge an action taken by a state agency or one of its officials acting in his or her official capacity, including article 78 proceedings, declaratory judgment actions involving state agency rulings, and actions seeking injunctive relief from state agency rulings.
This interpretation is consistent with the other provisions of CPLR article 86. The statute provides in section 8601 (a) that “[w]hether the position of the state was substantially justified shall be determined solely on the basis of the record before the agency or official whose act, acts, or failure to act gave rise to the civil action.” But there is no such “record before the agency or official” in plenary actions seeking principally compensatory damages like the instant action. Consistent with this provision, “position of the state” is defined as “the act, acts or failure to act from which judicial review is sought” (see CPLR 8602 [e]). Likewise, section 8602 defines “fees and other expenses” as those “incurred in connection with an administrative proceeding and judicial action,” further demonstrating that the statute applies only to suits challenging state administrative action.
The plurality supports its argument for a broad reading of the EAJA with an assertion that under a narrow interpretation, the statute’s provision carving out “an action brought in the court of claims” is superfluous (plurality op at 393-395). The Appellate Division majority also noted that, under the interpretation outlined above, “the language excluding actions commenced in the Court of Claims would be unnecessary inasmuch as such proceedings do not generally fall within that court’s limited jurisdiction” (76 AD3d at 192). But this provision is “unnecessary” under either interpretation. The Court of Claims Act specifically bars attorneys’ fees (see Court of Claims Act § 27). Even under the plurality’s interpretation of the EAJA, therefore, the Court of Claims “carve out” is superfluous. Accordingly, in light of the language used in the remainder of the statute, as well as the legislative history supporting a narrow *407 interpretation, this language must be attributed to a redundancy on the part of the legislature and not as an indication that the statute should be read broadly. “[Redundancy is hardly unusual in statutes addressing costs,” and “[t]he canon against surplusage is not an absolute rule” (Marx v General Revenue Corp., 568 US 371, 385 [2013] [internal quotation marks omitted]).[4] The carve out for the Court of Claims merely reiterates that compensatory damage claims — required in nearly every case to be brought in the Court of Claims — do not qualify for attorney’s fees under the EAJA.
The fact that Human Rights Law (HRL) cases may be brought in Supreme Court does not affect this interpretation. Before we decided Koerner v State of N.Y., Pilgrim Psychiatric Ctr. (62 NY2d 442 [1984]), this case would have originated in the Court of Claims, because money damages are not otherwise available against the State in Supreme Court; Koerner created a narrow exception, pursuant to which Human Rights Law cases may be brought in either Supreme Court or the Court of Claims. While the legislature is “presumed to have known of our decision” in Koerner (plurality op at 394), the general impression at the time, which remains true in all other contexts outside the HRL, was that the State could not be sued for monetary damages in Supreme Court. Moreover, the EAJA, as a fee-shifting statute in derogation of the common law, must be strictly construed (see Matter of Peck v New York State Div. of Hous. & Community Renewal, 188 AD2d 327, 327-328 [1st Dept 1992] ).[5] The statute’s plain language, with its express limitation on what constitutes a “civil action” eligible for fees, otherwise establishes that the statute is not applicable to employment discrimination actions for compensatory damages.[6]
*408 III.
Despite the Appellate Division majority’s belief that there is no need to resort to legislative history to discern the intent of the Legislature” (76 AD3d at 194), it is appropriate to consider legislative history even where a statute’s plain meaning is clear (see Riley v County of Broome, 95 NY2d 455, 463-464 [2000]). Such review is particularly appropriate where, as here, multiple judges have expressed diametrically opposed views of that “plain meaning.”
The legislative history unambiguously supports an interpretation of the statute as limited to judicial review of agency action. The legislature began attempting to pass some statutory mechanism for providing attorneys’ fees to prevailing parties challenging unjust state agency action beginning in 1982. The legislature noted the “tremendous power in [the state’s] ability to impose fines, suspend or revoke licenses or compel or restrict the activities of regulated entities” and that suits contesting these actions are extremely costly (1982 NY Assembly Bill A11940-A [Mar. 1982]). There is no dispute that this version of the bill only applied to review of state agency action. The bill was vetoed in large part because of cost concerns and breadth, as were the similar 1983 and 1984 draft bills.
The 1986 bill, drafted more narrowly than the previous bills, continued to address only state agency action, and again was vetoed, at least in part, because of cost concerns. While these bills over time became increasingly more narrow to address concerns over breadth and cost, the overall purpose remained the same — reimbursement for costs incurred in challenging state agency action. Although the plurality finds the legislative history of the earlier draft bills indicative of support for a broad interpretation of the EAJA in light of the differences among the previous bills and the final version (plurality op at 397-399), there is no legislative history suggesting a broadening of the bill’s applicability in terms of the type of “action” for which fees could be awarded.[7]
Moreover, the legislative history surrounding the passage of the 1989 bill “compel [s] a conclusion that the Legislature *409 intended that the EAJA would be utilized to seek attorneys’ fees and expenses in an action that involved [judicial] review of an administrative action of the State,” as the dissent below noted (76 AD3d at 201). In Governor Cuomo’s memorandum of approval of the bill, he commented that the statute
“authorize[d] a court to award attorneys’ fees to certain plaintiffs or petitioners who prevail in litigation reviewing State agency action or inaction when the State’s position in the case is not substantially justified. . . .
“It is a worthwhile experiment in improving access to justice for individuals and businesses who may not have the resources to sustain a long legal battle against an agency that is acting without justification” (Governor’s Approval Mem, Bill Jacket, L 1989, ch 770 at 20 [emphasis added]).
Likewise the bill’s sponsor noted that the bill was requested in order to “protect such parties from unfair agency enforcement actions” in light of the “prohibitive cost of contesting” “an action taken against them by a State agency” (Letter from Sponsor, Bill Jacket, L 1989, ch 770 at 6 [emphasis added]). The “prime Senate sponsor” of the bill acknowledged that it was intended to provide attorneys’ fees for litigants “that were successful in challenging unwarranted state actions” (Letter from Sponsor, Bill Jacket, L 1989, ch 770 at 5). Another letter of support speaks to the bill’s purpose in providing “a mechanism for overcoming the economic barriers that frequently prevent poor persons from contesting erroneous agency actions” (Letter from NY St Bar Assn, Bill Jacket, L 1989, ch 770 at 48 [emphasis added]). In fact, the letter relied upon by the Appellate Division majority to support their interpretation stated that “the legislation would provide an incentive to State agencies to reach more considered determinations” (Letter from Assn of the Bar of the City of NY, Bill Jacket, L 1989, ch 770 at 54). These statements would be wholly illogical and inexplicable if plenary actions seeking to recover compensatory damages were eligible for fee awards under the statute.
Striking a similar theme, the Budget Report on Bills submitted to the Governor in opposition to the EAJA stated that the bill’s purpose was to allow legal fees “when . . . individuals or *410 entities appeal an unjustifiable ruling of a State agency, board or commission” and that the bill “provides a means of redress for individuals, small businesses, and not-for-profit corporations in situations where a State agency, board or commission has given an unfavorable ruling without good cause” (Budget Report on Bills for 1989 NY Assembly Bill A3313-B, Bill Jacket, L 1989, ch 770 at 22). The arguments in support of the bill recounted in this budget report noted that the bill “would encourage individuals, small businesses and not-for-profit corporations to seek redress when they feel the State has made a ruling that unjustly affects them” (id. at 23). This language reflects an understanding of the statute as limited to actions challenging a state agency ruling or determination. While plaintiff argues that the budget report is of no use in determining the statute’s goal because it was not before the Assembly or Senate when the bill was passed, the budget report was presented to the Governor before he approved the passage of the bill. This interpretation of the budget report is also consistent with the letter sent by the bill’s sponsor to the Governor after the budget report was issued, noting that the “fiscal impact” of the bill would be minimal “if State agencies are using their regulatory powers responsibly and judiciously” (Letter from Sponsor dated Sept. 21, 1989, Bill Jacket, L 1989, ch 770 at 7). As noted above, the Governor in vetoing prior iterations of this legislation was particularly concerned with costs and would certainly have been misled by this budget analysis.
The legislative history demonstrates both the legislature’s and Governor’s continued concern with the bill’s cost. This concern is borne out by the statute’s final product; in particular, section 8604 requires annual reporting describing the “number, nature and amount of each award in the previous fiscal year.” The bill’s expected annual cost was less than $500,000, and its major purpose was to help those “whose rights have been violated but whose potential damage awards may not have been enough to induce lawyers to fight City Hall” (Matter of Wittlinger v Wing, 99 NY2d 425, 431 [2003]). It is difficult to align this concern with plaintiff’s $15 million demand for compensatory damages. Indeed two lawyers, without any apparent expectation of fee recovery from the state, signed contingency fee agreements with plaintiff.
Within all the legislative history over the course of the decade in which the EAJA was contemplated and developed, there is no discussion of a drastic change in the statute’s purpose or *411 applicability from its earlier incarnations. All involved in the 1989 bill’s passage assumed it was of limited applicability to judicial review of agency actions and not one statement in the record contradicts that conclusion.
Plaintiff also argues that the federal EAJA supports her interpretation because CPLR 8600 states that the EAJA was intended “to create a mechanism comparable to that in the federal Equal Access to Justice Act.” This argument fails for several reasons. First, despite the plurality’s suggestion that the federal EAJA contains a similar definition of civil action, the federal EAJA in fact uses different language (plurality op at 395-396). Under the federal statute, the phrase “any civil action” is plainly not limited to those seeking judicial review, as the statute identifies “any civil action” as “including,” among other things, “proceedings for judicial review of agency action” (28 USC § 2412 [d] [1] [A]), necessarily signaling that the phrase “any civil action” is a broad and inclusive term. This inclusive language reflects the broader applicability of that statute, in comparison with the state version, which limits an award of fees only to “any civil action or proceeding brought to seek judicial review” (CPLR 8602 [a]). We have recognized that “although the State EAJA purports to be modeled after the Federal act, the Legislature departed from the Federal model in certain significant respects” and, thus, the use of different language in the state EAJA “evinces an intent” to have a stricter or more narrow statute than the federal counterpart (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 353-354 [1995]). Here, the legislature’s choice to depart from the language of the federal statute reflects a conscious decision to limit the application of the state EAJA.[8] Moreover, the federal EAJA would not apply to plaintiff’s claim here, as title VII of the Civil Rights Act of 1964 includes an attorneys’fees provision (42 USC § 2000e-5 [k]).
The legislature’s recent amendment to the Human Rights Law, awarding attorneys’ fees to prevailing parties in certain *412 discrimination suits, echoes this federal scheme and further undermines plaintiff’s interpretation. The change reflects a legislative belief that, prior to the amendment, fees were not recoverable in gender-based discrimination actions. In fact, the sponsors’ memorandum for the amendment is devoid of reference to the EAJA and refers to the fact that “[u]nder existing law . . . many who are discriminated against cannot afford to hire an attorney and never seek redress” (Sponsors’ Mem, L 2015, ch 364). The legislature’s understanding at the time of the HRL amendments that individuals in similar situations to plaintiff were not able to recover attorneys’ fees for Human Rights Law claims further supports a narrow interpretation of the statute’s limitations. Instead, the plurality’s opinion opens the door to awards of attorneys’ fees in numerous other actions, exclusively against the State, for compensatory damages not contemplated by the holding herein and not subject to fees under the revised provisions of the Human Rights Law.
IV.
The meaning of article 86 has been plain to courts in this State for the past 28 years. New York courts have applied article 86 only in the context of article 78 proceedings, declaratory judgment actions, and actions for injunctive relief. In more than 70 published cases contemplating article 86, courts have considered it exclusively in the context of actions seeking judicial review of agency administrative actions. For example, Supreme Court, Erie County granted attorneys’ fees to a petitioner in an article 78 proceeding seeking to annul a determination of an administrative law judge of the State Office of Children and Family Services sustaining a maltreatment report against petitioner (Wright v New York State Off. of Children & Family Servs., 2003 NY Slip Op 51083[U] [Sup Ct, Erie County 2003]). Likewise, the Second Department addressed whether attorneys’ fees were owed to a petitioner in an article 78 proceeding challenging the termination of petitioner’s personal care benefits by the Westchester County Department of Social Services (Matter of Barnett v New York State Dept. of Social Servs., 212 AD2d 696 [2d Dept 1995]). Similarly, in annual reports issued pursuant to section 8604 from 2004 through 2014, all included awards were granted in cases that fit this description. For example, in fiscal year 2014, each of the reported suits awarding attorneys’ fees pursuant to the EAJA involved a challenge to state agency action (see Letter from *413 Thomas DiNapoli to Governor Cuomo re Article 86 Report [Nov. 13, 2014]). These cases demonstrate the type of litigation to which the statute is intended to apply, in which a plaintiff with limited resources and a limited potential monetary recovery would need assistance “fighting City Hall.” During the same period, in more than 10 annual reports made of fee awards under the EAJA, there is no record of a single case in which plaintiff attempted to obtain attorneys’ fees under article 86 in a suit seeking predominantly compensatory damages — until now.
V.
The facts of this case are compelling, both as to the injuries suffered by the plaintiff and the conduct engaged in by the defendant.[9] But in response the plurality establishes a rule that will have repercussions well beyond awarding fees to this particular plaintiffs attorneys. The plurality does this in contradiction to the plain meaning of the statute, the unequivocal legislative history, and the interpretation given to the statute by courts and litigants for the past 28 years. Their motives in doing so are understandable, but the rule created is nevertheless unsupportable.
Accordingly, I dissent.
Judges Rivera and Acosta[10] concur; Judge Wilson concurs in the result in a separate concurring opinion; Judge Garcia dissents in an opinion in which Judge Stein concurs; Judge Fahey taking no part.
Judgment appealed from, and order of the Appellate Division insofar as bought up for review, affirmed, with costs.

. In 2002, the parties entered into a stipulation pursuant to which defendants agreed to pay more than $76,000 of plaintiff’s attorneys’ fees to resolve a sanctions motion.

. The former attorney’s high fee requests led in part to a breakdown in the attorney-client relationship. Plaintiff attested that “[f]rom May 2004 to March 2005 [the former attorney’s] bill increased by 50% ... I cannot pay this bill.” She also stated that the former attorney “would continually file appeals, motions, etc. without ever conferring” with plaintiff and that plaintiff believed some of these actions “were unnecessary.”

. Legislators and the Governor were particularly concerned about attorneys seeking enhanced fees when considering passage of the EAJA (see Letter from Sponsor, Bill Jacket, L 1989, ch 770 at 8).

. Nor does our interpretation violate the principle of “expressio unius est exclusio alterius" (plurality op at 394). A narrow reading of the EAJA gives the limitation on “any civil action” its intended meaning based on the statute’s language.

. It is true that “limitations should not be read into . . . remedial statutes ‘unless the limitation[s] proposed [are] “clearly expressed” ’ ” (plurality op at 397). The definition of “action” in section 8602 (a) clearly expresses such a limitation.

. The concurrence argues that the State conceded at oral argument that the EAJA entitles plaintiff to recover fees for that portion of her lawsuit that related to her claim for injunctive relief (concurring op at 402-403). Any such concession “is not binding on this Court” (People v Sincerbeaux, 27 NY3d 683, 689 n 3 [2016]).

. The Report of the Association of the Bax of the City of New York does not suggest a change in the statute’s purpose (see plurality op at 398-399), but instead discusses the value that the final bill adds by “significantly lowering economic barriers that currently prevent many individuals from contesting irrational an[d] illegal State government action” (Assn of the Bar of the City of NY, Report on Legislation, Bill Jacket, L 1989, ch 770 at 57). This statement does not evince awareness of an intent to change the types of *409 cases eligible for fees under the EAJA and indeed speaks to reigning in problematic agency action.

. The fact that this language was not in the federal EAJA when it was first enacted demonstrates how broader language is necessary to expand the scope of the EAJA. Moreover, the federal EAJA is broader than our state version in another manner — it allows for recovery by a prevailing party whether the action is brought “by or against the United States or any agency” (28 USC § 2412 [a] [1]), while our EAJA is limited to only actions “brought against the state” (CPLR 8601 [a]). The plurality’s decision to read the state EAJA as “entirely consistent with its federal counterpart” (plurality op at 396) is not supported by the language of the statute or our precedent.

. Alternative remedies exist to punish and prevent the dilatory conduct engaged in by the State, including sanctions. In fact, as discussed, State defendants in this case were sanctioned multiple times and settled one such motion by agreeing to pay more than $76,000 in attorneys’ fees.