Matter of Walker v Martuscello

2026 NY Slip Op 02701

April 30, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Junarian Walker, Appellant,

v

Daniel F. Martuscello III, as Commissioner of Corrections and Community Supervision, Respondent.

Decided and Entered:April 30, 2026

CV-24-1742

Calendar Date: March 24, 2026

Before: Clark, J.P., Aarons, Ceresia, Mcshan And Corcoran, JJ.

Prisoners' Legal Services of New York, Albany (Matthew McGowan of counsel), for appellant.

Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for respondent.

[*1]

Clark, J.P.

Appeal from an order of the Supreme Court (Meagan Galligan, J.), entered September 17, 2024 in Albany County, which, in a proceeding pursuant to CPLR article 78, denied petitioner's motion for counsel fees.

Petitioner is an incarcerated individual with serious mental illness (see Matter of Walker v Commissioner, N.Y. State Dept. of Corr. & Community Supervision, 241 AD3d 1, 4 [3d Dept 2025]). In September 2023, while petitioner was confined in a residential mental health unit (hereinafter RMHU) at Marcy Correctional Facility, he was charged in a misbehavior report with violent conduct and making threats. After a tier III disciplinary hearing, petitioner was found guilty as charged and, as relevant here, assessed a penalty of 120 days of confinement in the Special Housing Unit (hereinafter SHU).FN1 The determination and attendant penalties were upheld on administrative appeal. Petitioner thereafter commenced this CPLR article 78 proceeding to annul so much of the determination as imposed confinement in the SHU as violative of the Humane Alternatives to Long-Term Solitary Confinement Act (hereinafter the HALT Act) and the Special Housing Unit Exclusion Law (hereinafter the SHU Exclusion Law). In that regard, petitioner argued that his conduct did not satisfy the criteria necessary to impose a 120-day confinement sanction under Correction Law §§ 137 (6) (k) (ii) and 401 (5) (a), and that the Hearing Officer also failed to make required written findings to support such sanction.

Following joinder of issue, Supreme Court, as relevant here, partially granted the petition to the extent of annulling so much of the disciplinary determination as imposed more than three days of segregated confinement. In so doing, the court found that the 120-day confinement sanction was "not supported by the statutorily-required written findings that petitioner's heinous and destructive words created a significant risk of imminent serious physical injury to staff or other incarcerated persons and created an unreasonable risk to the security of the facility," and the record was otherwise devoid of facts that would permit a rational inference that such risk existed.

Based upon such determination, petitioner moved for $8,550 in counsel fees pursuant to CPLR 8601, citing his status as the prevailing party in the proceeding. In opposition, respondent acknowledged that he had failed to strictly comply with the requirements of Correction Law § 137 (6) (k) (ii) necessary to impose the 120-day confinement sanction under the HALT Act. Nevertheless, he argued that "there existed a reasonable basis in law or fact to support the underlying determination" and, thus, his position in the proceeding was "substantially justified" within the meaning of CPLR 8601, rendering a fee award inappropriate.

Supreme Court denied petitioner's application for counsel fees, finding that, while "[r]espondent committed procedural errors by not addressing the questions of imminence or unreasonable risk and [*2]making statutorily required written findings," respondent's determination was nevertheless "substantially justified" in light of the threats made by petitioner and his underlying disciplinary record. The court also found, on a sua sponte basis, that "special circumstances exist[ed] rendering a counsel fee award unjust" given the "serious threat levied by petitioner against respondent's employees as well as an infant child" and respondent's legal obligation to "protect its employees and the incarcerated persons in its custody." Petitioner appeals, arguing that Supreme Court abused its discretion in denying his motion for counsel fees.

We agree. CPLR 8601 was enacted as part of the Equal Access to Justice Act (hereinafter EAJA) "to help litigants secure legal assistance to contest wrongful actions of state agencies" (Matter of Wittlinger v Wing, 99 NY2d 425, 431 [2003]; see CPLR 8600). "By allowing victorious [litigants] to gain [counsel] fees, the statute seeks to help those whose rights have been violated but whose potential damage awards may not have been enough to induce lawyers to fight [the state]" (Matter of Wittlinger v Wing, 99 NY2d at 431). The statute provides that "a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust" (CPLR 8601 [a]). The "[p]osition of the state means the act, acts or failure to act from which judicial review is sought" (CPLR 8602 [e] [internal quotation marks omitted]). The term "substantially justified," while not statutorily defined, "has been interpreted . . . as meaning justified to a degree that could satisfy a reasonable person, or having a reasonable basis both in law and fact" (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 356 [1995] [internal quotation marks and citation omitted]; see Matter of Brown v City of Schenectady, 209 AD3d 128, 133 [3d Dept 2022]).

"Whether the position of the state was substantially justified shall be determined solely on the basis of the record before the agency or official whose act, acts, or failure to act gave rise to the civil action" (CPLR 8601 [a]), and "the mere fact that [a respondent] lost on the merits in the underlying proceeding does not presumptively" mean that its position in the underlying litigation was not substantially justified (Matter of Sutherland v Glennon, 256 AD2d 984, 985 [3d Dept 1998]). The ultimate determination of whether the state's position was substantially justified is "committed to the sound discretion of the court of first instance and is reviewable as an exercise of judicial discretion" (Matter of Vapor Tech. Assn. v Cuomo, 203 AD3d 1516, 1517 [3d Dept 2022] [internal quotation marks and citations omitted], lv dismissed 39 NY3d 960 [2022]).

Here, the imposition of the 120-day confinement [*3]sanction against petitioner was the state action that gave rise to the underlying CPLR article 78 proceeding and it is undisputed that petitioner prevailed in such proceeding by obtaining a court order annulling such determination as violative of the HALT Act and the SHU Exclusion Law. As such, whether respondent's position was substantially justified within the meaning of CPLR 8601 distills to an analysis of whether there was "a reasonable basis both in law and fact" to impose the 120-day confinement sanction (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d at 356 [internal quotation marks and citation omitted]).

As relevant here, the HALT Act amended the SHU Exclusion Law to provide that incarcerated individuals housed in RMHUs "shall not be sanctioned with segregated confinement . . . except in exceptional circumstances where such incarcerated individual's conduct poses a significant and unreasonable risk to the safety of incarcerated individuals or staff, or to the security of the facility and he or she has been found to have committed an act or acts defined in" Correction Law § 137 (6) (k) (ii) (Correction Law § 401 [5] [a]; see Matter of Walker v Commissioner, N.Y. State Dept. of Corr. & Community Supervision, 241 AD3d at 6). One of the qualifying acts enumerated in Correction Law § 137 (6) (k) (ii) is "making an imminent threat of . . . serious physical injury or death if the person has a history of causing such physical injury or death" (Correction Law § 137 [6] [k] [ii] [A] [emphasis added]). When the incarcerated individual "is or has been on the mental health caseload or appears to require psychiatric attention," the Commissioner of Mental Health or a designee must also "reasonably determine that there is a strong likelihood that the person will carry out such threat" (Correction Law § 137 [6] [k] [ii] [A]). Moreover, under the HALT Act, an incarcerated individual may not be placed in segregated confinement for more than three consecutive days (or over six days in any 30-day period) unless: (1) he or she has committed one of the acts set forth in Correction Law § 137 (6) (k) (ii) (A)-(G), and (2) respondent makes a written determination, "based on specific objective criteria," that the individual's acts "were so heinous or destructive that placement of the individual in general population housing creates a significant risk of imminent serious physical injury to staff or other incarcerated persons, and creates an unreasonable risk to the security of the facility" (Correction Law § 137 [6] [k] [ii]; see Matter of Peterkin v New York State Dept. of Corr. & Community Supervision, 242 AD3d 26, 32 [3d Dept 2025]; Matter of Walker v Commissioner, N.Y. State Dept. of Corr. & Community Supervision, 241 AD3d at 6).

As for the circumstances precipitating petitioner's threats, the record from the underlying disciplinary proceeding reveals that, while he was speaking to a staff member of Marcy Correctional Facility during a crisis [*4]call, petitioner verbally threatened to kill the First Deputy and the Unit Chief of the facility, as well as the First Deputy's infant child. During the ensuing tier III disciplinary hearing, petitioner called the author of the misbehavior report to testify, who affirmed that he believed petitioner's statements to be a threat. The record from the underlying disciplinary proceeding reveals that, at the time of petitioner's threats, he had numerous prior dispositions for engaging in violent conduct and making threats; however, the nature of petitioner's violent conduct history was not clearly delineated.

In his written disposition finding petitioner guilty of the charges and imposing a 120-day confinement sanction, the Hearing Officer articulated that "threats made by [incarcerated individuals] to cause harm to any person [are] unacceptable [and] will not be tolerated" and that petitioner's "threats to harm . . . pose a serious risk to the safety of [the threatened individuals] and others." The Hearing Officer's written disposition also stated that "there may be a relationship between the [incarcerated individual's] actions [and] his mental health diagnosis." Upon petitioner's administrative appeal, respondent affirmed the penalty imposed without further reasoning.

In justifying the confinement sanction imposed on petitioner, respondent notes that the contours of the HALT Act and the SHU Exclusion Law were still being litigated at the time of the Hearing Officer's determination. However, the plain language of these statutes clearly required specific conduct and findings to impose a 120-day confinement sanction against an incarcerated individual housed in an RMHU. Even putting aside the lack of the required written findings, respondent did not have a reasonable basis to conclude that petitioner's statements — made during a crisis call while he was confined in an RMHU without any indication that he had access to the individuals who were the subject of his threats or a history of causing serious physical injury or death to another person — constituted a qualifying threat under Correction Law § 137 (6) (k) (ii) (A). Although Supreme Court recognized as much in annulling the 120-day confinement sanction, expressly stating that "the administrative record . . . does not contain facts from which the court can discern a rational basis for respondent's determination," it nevertheless denied petitioner's application for counsel fees on the ground that respondent's position was substantially justified. Given the inherent conflict in Supreme Court's determinations and our finding that respondent's position was not "substantially justified" within the meaning of CPLR 8601, we find that Supreme Court abused its discretion in denying petitioner's request for counsel fees on this basis (see Matter of Brown v City of Schenectady, 209 AD3d at 134; Matter of Serio v New York State Dept. of Correctional Servs., 215 AD2d 835, 835 [3d Dept 1995]).

Supreme Court also erroneously [*5]concluded that "special circumstances" existed that would render an award of counsel fees "unjust" (CPLR 8601 [a]). Although there is a dearth of New York case law regarding the special circumstances exception of CPLR 8601, insofar as the state EAJA was modeled after its federal counterpart, New York courts have relied on federal case law to provide guidance in this respect (see CPLR 8600; Matter of Thomas v Coughlin, 194 AD2d 281, 283 [3d Dept 1993]; see also Albunio v City of New York, 23 NY3d 65, 73 [2014]; Matter of Markey v Tietz, 244 AD3d 78, 86 [3d Dept 2025]). In support of applying CPLR 8601's "special circumstances" exception, Supreme Court emphasized that respondent was "under a legal duty to protect its employees and the incarcerated persons in its custody" and that "it would be unjust to award counsel fees to the perpetrator of [such] heinous threats."

Respondent argues that such finding was a provident exercise of discretion insofar as petitioner's own misconduct led to the unauthorized disciplinary sanction in this case.

We reject that reasoning, as it runs counter to the purpose of the EAJA and risks foreclosing fee awards in any disciplinary proceeding where an incarcerated individual is found guilty of violating prison disciplinary rules but is later successful in challenging a violation of his or her rights (see Matter of Thomas v Coughlin, 194 AD3d at 283). The federal cases cited by respondent in advocating for an affirmance based upon petitioner's alleged "unclean hands" are distinguishable, as they primarily involved situations where a petitioner "took advantage of the very government misconduct he [or she] later challenged in court" (id. at 284; see Sakhawati v Lynch, 839 F3d 476, 478 [6th Cir 2016]; compare Taylor v United States, 815 F2d 249, 253 [3d Cir 1987]; Oguachuba v Immigration & Naturalization Serv., 706 F2d 93, 99 [2d Cir 1983]). Such is not the case here and we discern no other special circumstances that would render a fee award unjust (see CPLR 8601 [a]). In light of our determination, the matter must be remitted to Supreme Court to determine the amount of the fee award owed to petitioner.

Aarons, Ceresia, McShan and Corcoran, JJ., concur.

ORDERED that the order is reversed, on the law and the facts, with costs, motion for counsel fees under CPLR 8601 granted, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1

In his brief on appeal, respondent reveals that, at the time the disciplinary sanction was imposed, SHU was being used as a general term "to denote disciplinary removal from [the] general population" and not necessarily "segregated confinement." Respondent further reveals that petitioner was not actually confined to any location other than the RMHU as a result of the disciplinary sanction.